| 22 | 89 |
| 61 | 393 |

## GRISWOLD vs. ALLEN.

A executed and delivered to B, a warranty deed, which, after describing a certain tract of land, proceeded as follows:—" with the privilege of erecting and continuing a dam across the river, so far as my land extends, at the upper end of my river meadow, in said M, and to cut, excavate, and make a raceway or water-course, four feet wide at the bottom, with usual sloping banks, across my said meadow and land, and to leave the dirt and

stone excavated on my land, by the side of said race, to the above described piece of land, and make all necessary embankments, walls and troughs, to convey as much of the water from said river to said piece of land, as the said B shall choose; reserving to myself the privilege to pass and repass said raceway where I please, without injury to said B." It was held, that such deed granted the right only to make the drain and raceway therein described, and not the right to the use of as much water as would flow through such raceway; and therefore, that where a riparian proprietor, below the raceway, evicted the grantee from the right of diverting the water of the river through the same, an action for damages on the covenants of warranty contained in such deed, could not be sustained.

Whether such deed implied a license to the grantee, to use the water of the river, to the same extent to which the grantor had a right to use it, at the time the deed was given.—*Qu.*

THIS was an action on the covenants of a warranty deed, brought to the superior court for New Haven county. The declaration contained three counts. In the first count, the plaintiff averred, that on the 15th day of April, 1831, the defendant, being then seized and lawfully possessed in his own right, in fee simple, of a certain piece of land, situated in Meriden, containing about ten acres, bounded westerly on Quinnipiac river, so called, and extending to the center of said river, executed and delivered to the plaintiff, a deed of the southerly part of said piece of land, with a privilege in the northern part of the said piece of land, said privilege commencing on said river, at a point south of the place where the northern boundary of the defendant's land strikes said river, and running southerly across the defendant's land, to the piece so deeded to the plaintiff;—which deed, under the hand and seal of the defendant, was of the form following, to wit:

"Know all men by these presents, that I, Levi Allen, of Meriden, in the county of New Haven, and state of Connecticut, for the consideration of five hundred dollars, received to my full satisfaction, of Harry Griswold, of the town, county and state aforesaid, do give, grant, bargain, sell and confirm unto the said Harry Griswold, his heirs and assigns, forever, a certain piece of land, situate in said Meriden,

Griswold *v.* Allen.

containing in quantity five acres, and is bounded northerly on my own land; easterly on the heirs of Charles Baldwin, deceased, and the river; southerly on the river; and westerly on my own land and the river, with the privilege of erecting and continuing a dam across the river, so far as my land extends at the uper end of my river meadow in said Meriden, and to cut, excavate and make a raceway or watercourse, four feet wide at the bottom, with usual sloping banks, across my said meadow and land, and to leave the dirt and stone excavated, on my land, by the side of said race to the above described piece of land, and make all necessary embankments, walls and troughs, to convey as much of the water from said river to said piece of land, as the said Griswold shall choose; reserving to myself the privilege to pass and repass said raceway where I please, without injury to said Griswold.

" To have and to hold the above granted and bargained premises, with the appurtenances thereof, unto the said grantee, his heirs and assigns, forever, to his and their own proper use and behoof. And also I, the said grantor, do, for myself and heirs, executors and administrators, covenant with the said grantee, his heirs and assigns, that at and until the unsealing of these presents, I am well seized of the premises as a good, indefeasible estate in fee simple; and have good right to bargain and sell the same, in manner and form as is above written, and that the same is free from all incumbrances whatsoever. And furthermore, I, the said grantor, do, by these presents, bind myself and heirs forever to warrant and defend the above granted and bargained premises to the said grantee, his heirs and assigns, against all claims and demand whatsoever.

" In witness whereof, I have hereunto set my hand and seal, this 15th day of April, A. D. 1831.

LEVI ALLEN.   [L. S.]

" Signed, sealed and delivered, in presence of

BENAJAH ANDREWS.<br>ISAAC J. HOUGH."

"NEW HAVEN COUNTY, *ss.* Meriden, 15th day of April, 1831.

"Personally appeared Levi Allen, signer and sealer of the foregoing instrument, and acknowledged the same to be his free act and deed, before me.

BENAJAH ANDREWS, *Justice of the Peace.*"

The declaration then alleged, that by said deed, the defendant covenanted and promised to and with the plaintiff, that when said deed was delivered as aforesaid, he had good right to bargain and sell to the plaintiff the right forever, of taking from said Quinnipiac river, at the place mentioned in said deed, and of conveying through the raceway therein specified and provided, whenever the plaintiff, his heirs and assigns should choose so to do, as much water as could be drawn from said river, by means of said raceway, which, the plaintiff says, would be sufficient to constitute a stream of the dimensions of said raceway. And that the defendant further covenanted by said deed, and promised to and with the plaintiff, that he would warrant and defend his, the plaintiff's, right to the privilege of taking the water to the extent and in the manner aforesaid, from said river, against all claims and demands whatsoever, as by said deed, ready in court to be shown, would fully appear. And that, relying upon said covenant of the defendant, the plaintiff entered upon the possession of said tract of land, and expended a large sum of money, to wit, three thousand dollars, in erecting buildings and machinery thereon, which would be entirely valueless without said water privilege; that he further expended a large sum, to wit, five hundred dollars, in excavating the raceway in said deed mentioned; and that he invested large sums of money in the business of manufacturing in said building. Yet that afterward, one Daniel Parker, who owned and occupied a piece of land on the opposite side of said stream, above the said land of the plaintiff, and below the point where the water was taken from said river, by means of said raceway, by the plaintiff, brought an

action against the plaintiff, for diverting the water from said stream, and from his said land, by drawing the same through said raceway.   The declaration then set out circumstantially the proceedings in said action, and further alleged, that on the second Tuesday of October, 1846, final judgment was rendered in favor of the then plaintiff, to recover of the then defendant the sum of $      damages and costs, taxed at       ; and thereupon the plaintiff relinquished all right to said water privilege, and gave up the same, and was obliged to pay, and did pay, said damages and costs.   It then averred, that, to save himself from further and greater loss and damage, to which he, the defendant, by reason thereof, would otherwise have been subjected, he purchased of the said Daniel Parker the right of taking the water from said river, in the manner specified in said deed, so far as the said Daniel Parker could dispose of the same, and paid him a large sum, to wit, five hundred dollars, therefor.   He also bought of all the other proprietors of land adjoining said stream, their interest in said privilege, or their right of preventing the plaintiff from occupying the same, and paid a large sum, to wit, two hundred dollars, therefor.   It further averred, that the commencement and continuance of said Parker's suit, caused a great damage to the plaintiff, by interrupting his business, and preventing him from extending and enlarging his manufacturing operations, as he otherwise would have done, in a profitable manner, by reason of which he sustained damages to the amount of one thousand dollars. The plaintiff further averred, that the said Parker, when said deed was delivered to the plaintiff, and long afterward, had the right of preventing the plaintiff from taking said water, and so the plaintiff said, that the defendant had broken his said covenant ; that he had not the right to bargain and sell to the plaintiff the right of taking the water from said river as aforesaid ; that he had not warranted and defended the said right as aforesaid, but that the plaintiff had been evicted from the same, by said Parker, to wit, on the

20th day of October, 1844, and had sustained great damage thereby.

In the second count, the plaintiff averred, that the defendant, by a certain other deed of the same tenor and description, as in said first count is contained, on the 15th day of April, 1831, covenanted and promised with and to the plaintiff, that he, the defendant, would warrant and defend all the premises in said deed described, as being therein and thereby conveyed to the plaintiff against all claims and demands whatsoever; whereas the plaintiff says, that the defendant hath not kept his said covenant and promise, but hath broken the same; because he says, that the defendant hath not defended the plaintiff against all claims to the water of said river, which, by said deed, the plaintiff was to have the privilege of taking from the same; but that one Daniel Parker, of said Meriden, had, when said deed was given, and for more than ten years thereafter, continued to have, the right of having the same water flow in its natural current by and below the place in said deed specified, at which the plaintiff was to have the privilege of diverting the same,—and the said Parker enforced his said right, and evicted the plaintiff from the same, and from the privilege in said deed attempted to be conveyed, the plaintiff being in possession thereof, to wit, on the 20th day of October, 1844; and the plaintiff has, by reason of the premises, sustained great loss in his business, and has been deprived of said privilege, which he says, was, at the time of said eviction, of the value of three thousand dollars.

In the third count, it was alleged, that when said deed was executed and delivered to the plaintiff, one Daniel Parker had the right of having the water in said river flow in its natural current to the land of the said Parker, situated on said stream, below the place on said stream at which the plaintiff, by said deed, was to have the privilege of taking said water from the same, and that the said Parker continued to have such right, until on or about the 20th day of

October, 1844, when he disturbed the plaintiff, by reason of his said right, in the use and enjoyment of said privilege, and wholly deprived him of the same, and evicted him from that portion of the premises attempted to be conveyed by said deed, which privilege so attempted to be conveyed, the plaintiff says was then of the value of three thousand dollars.

To this declaration the defendant demurred. The court adjudged the declaration insufficient, and thereupon, rendered judgment for the defendant. To obtain a reversal of this judgment, the plaintiff, by motion in error, brought the record before this court.

*Dutton, R. I.* and *C. R. Ingersoll* and *L. E. Munson,* in support of the motion, claimed, 1. The defendant, by his deed, covenanted, that the plaintiff should have the privilege of taking, by the ditch, as much water as he should choose. Everything which is necessary to carry into effect the object which the parties had in view, will, if necessary, be implied. *Yocum* v. *Barnes,* 8 B. Monroe, 496. *Lovering* v. *Lovering,* 13 N. H. R., 513. 5 Met., 431. *Miller* v. *Scolfield,* 12 Conn. R., 335.

2. The object of the grantee, was, to secure a water privilege. The fair import of the language used, is, that the right to the water was to pass to the grantee. A ditch without water, would be useless.

Courts have repeatedly gone as far, and in some instances much farther, in implying covenants, than the plaintiff requires. *Coe* v. *Talcott,* 5 Day, 88. *Watson* v. *Chew,* 6 Watts, 362. *Webb* v. *Plummer,* 2 Barn & Ald., 746. *Earl of Shrewsbury* v. *Gould,* 2 B. & A., 487. Comyn's Dig. Cov. A. 2.

3. The defendant covenanted, that he had good right to bargain and sell whatever he did sell. As he sold the privilege to take as much water as the plaintiff pleased, from the

river, and as the plaintiff did not obtain that right by the deed, the defendant is liable on this covenant.

4. The defendant warranted the title to all that he sold. The principal thing bought and sold was the water privilege.

1st.. The covenant of warranty will attach to such an incorporeal hereditament as a water-course. *Bally* v. *Wells*, 3 Wilson, 26. 1 Smith's Leading Cases, 102. Coke L., 366, Com. Dig. Guaranty, E. Angell on Water-courses, 283. *Jordan* v. *Wilson*, 6 Com. L. R., 420. 2d. The case of *Mitchell* v. *Warner*, 5 Conn. R., 497, which seems at first to contain a contrary doctrine, is not inconsistent with this rule. That merely decides, that a warranty of land does not embrace the water on it. Judge Hosmer admits, that a covenant relating to an easement, would be good between the parties. 5 Conn. R., 519. But the doctrine of this case has been denied. Angel on Water-courses, 283. 1 Smith's Leading Cases, 102.

*Baldwin, Kimberly* and *Beach*, contra, contended, That no right or privilege to use the water of Quinnipiac river, was intended to be, or was in fact, conveyed to the plaintiff.

1. The subject matter of the deed, is the five acre piece of land which is described and bounded.

2. The privilege of erecting a dam at the upper end of the meadow, across the river so far as the grantee's land extended, *i. e.*, to the center of the stream, and to make the raceway, embankments, &c., is, and was, a mere privilege to be exercised on the land of the grantor, above the granted premises, of which the grantee could avail himself, or not, as he chose.

3. The privilege granted is, not to convey the water, but to make a raceway across the grantor's meadows, of sufficient size to convey the water to the five acre piece described in the deed.

The object for which the privilege of constructing the raceway, &c., might be wanted, to wit, the conveyance of water from the river, is spoken of, not by way of asserting

any right in the grantor to convey the water, but simply as descriptive of the size of the raceway.

4. The fact, that the stream was then running in its natural course, and that the grantor refers, in his deed, to the ownership of another, across the stream, and limits the privilege of constructing the dam to the center of the river, is conclusive evidence that no water privilege was intended to be conveyed. Platt on Covenants, 3 Law Library, 136. *Butterfield* v. *Marshall*, 1 Lutw., 192. 7 Petersdorf's Abr., 219. *Pomfret* v. *Wicoff*, 1 Saund., 321. 1 Vent. 26, 44. 1 Sid., 429. 2 Keb., 505, 543, 569. *Rhodes* v. *Bullard*, 7 East, 116.

STORRS, J. The only question made before us, in the argument of this case, is, as to the extent of the subject matter embraced in the covenants of the defendant, contained in the conveyance from him to the plaintiff. Those covenants are exactly co-extensive, in that respect, with the premises or things previously granted by the deed. By determining, therefore, what was so granted, we shall ascertain what is within the scope and intention of the covenants.

The plaintiff claims, that the defendant, by this conveyance, granted to him not only the piece of land, containing five acres, therein described, and the right to erect and continue a dam across the river above, as far as the defendant's land then extended, at the upper end of his adjoining meadow, and to excavate and make a raceway or artificial watercourse from said river, of the dimensions therein stated, to the piece of land so granted, over the said adjoining land of the defendant, but also, a right to take and appropriate to his use, as much of the water of said river as could be drawn therefrom, by a raceway of those dimensions ; and that, as he did not acquire, by the deed, a legal right to the use of so great a quantity of water as would flow through such a raceway, he is entitled to main-

tain this action on the covenants contained in it. The defendant denies that any right or privilege to use the water of said river was intended to be, or was in fact, granted to the plaintiff, and consequently, that any such right was secured to the plaintiff by said covenants. ' The point has not been made between the parties, whether, from the grant of a right to the plaintiff, to erect a dam at the upper end of the defendant's adjoining land, and to excavate and make a ditch therefrom to the land granted, a license to the plaintiff would be implied, to use the water of the stream, by means of that ditch, to the extent to which the defendant, the grantor, had a right to use it. We are inclined to the opinion, from the cursory examination which we have given to this point, that such a license would be deemed to be given. But it is not important to decide it, because this action is brought, and can be sustained, only on the ground that, by the grant of the defendant, he undertook to convey and transfer to the plaintiff the absolute right to use a certain definite quantity of the water of the river, be it more or less, than the defendant, as a riparian proprietor above, would have a right to use, that is to say, as much water as could be drawn from the river, by a raceway of the particular dimensions specified in the deed ; and if the grant is to be considered only as a license to take as much water as the defendant had a right to do, such right would be fully granted to, and vested in the plaintiff, by the deed, and there would obviously, therefore, be no ground for a complaint, that the defendant, by his covenants, had undertaken to assure to the plaintiff a greater right than he was entitled to. But the question here is, whether the deed purported to convey a right to draw from the river the particular and definite quantity which has been mentioned ; and we are clearly of opinion that it did not.

The object, in determining the construction of this grant, is, in this, as in all other similar cases, to ascertain the intention of the parties. For this purpose, we look at the terms of the instrument, in connection with the situation of

the parties, and the object they had in view. We do not think that, in this case, it is necessary to resort to any of those artificial rules of construction which are, in cases of doubt, adopted, in order to ascertain the intentions of parties, because we think, that the meaning of the grant in question is too plain to require such aid.

The grant to the plaintiff, by this deed, is of three things. First, of the piece of land therein described; secondly, of the right or privilege of erecting and continuing a dam, at the place and to the extent therein mentioned; and, thirdly, of the right or privilege of cutting, excavating and making a raceway or water-course, of the dimensions and character therein specified, to the said piece of land adjoining it, and from the upper end of such adjoining land, where it borders on the river above, and to make all necessary embankments, walls and troughs to convey as much of the water from said river to said piece of land, as the said Griswold (the plaintiff) shall choose. As to the raceway, the deed grants to the plaintiff only the right to cut, excavate and make it, with the necessary embankments, walls and troughs, over the specified remaining land of the defendant. There is nothing, in its terms, that has the least allusion to the quantity of water which the plaintiff should be entitled to abstract from the stream, nor anything that purports to give him a right to abstract any. The conveyance of the water from the river, by the raceway, is mentioned in connection with its necessary embankments, walls and troughs; not for the purpose of asserting a right, in the defendant, to take from the stream as much water as would flow in that raceway, or any water whatever, nor of securing to the plaintiff any such right, but only as indicating the object for which the raceway might be wanted. The phrase, "to make all necessary embankments, walls and troughs to convey as much of the water from said river," &c., is tantamount to the expression, "to make all embankments, &c., which may be necessary for the purpose of conveying as much of the water," &c. It is,

therefore, only a grant of an easement on the defendant's adjoining land, namely, the right to make a dam and raceway upon it, for a particular purpose. Whether, after it was made, it could be used for that purpose, to the extent to which it was capable, would depend, not on the right of making or having the raceway on the defendant's land, but on the acquisition, by the plaintiff, of another and different right, namely, that of drawing the water from the river with which such raceway was connected; a right which might or might not belong to, or be acquired from, the defendant. These rights are entirely distinct and independent of each other in their nature, and have no necessary connection, although it may indeed be necessary or convenient to possess both, in order to make either of them beneficial or profitable. A right to make and have a ditch of a particular size, over the land of another person, is obviously quite distinct and different from a right to abstract the water from a stream, to the use of which that or some other person is entitled. Although, then, the grant to the plaintiff, in this instance, of a right to erect the dam, and make the raceway on the land of the defendant, might imply a right in the plaintiff to draw from the river, by means of such raceway, as much water as the defendant himself might use, we do not think that it extends any further; and we are also of opinion that, beyond this, it was the intention of the defendant, to grant, and of the plaintiff to obtain, by the deed in question, the right only of making a passage for so much of the water of the river, as should be acquired by the plaintiff, from those to whom the use of the water belonged, not exceeding the capacity of the raceway described in the deed. We are strongly confirmed in this opinion, by the circumstance, that it appears on the face of the deed, by the southerly and westerly boundaries of the piece of land conveyed to the plaintiff, that the defendant owned only to the center of the river; that the river was then running in its natural course; and that the privilege of constructing the dam was limited

to the extent of the defendant's land. These facts go strongly to show, that no water privilege, beyond that which the defendant then had, was intended to be conveyed by him.

The case of *Coe* v. *Talcott*, (5 Day's R., 88,) on which the plaintiff places much reliance, is plainly distinguishable from the present. In that case, there was a clear intention to convey to the grantee the right to the use of the precise quantity of one-half of the water of the stream which ran in the brook, on the adjoining land of the grantor, and, in order to enjoy it, to dig a ditch on said land, and thereby turn the one-half of said brook upon the land conveyed. The language of the deed was express to that effect, and no point could, or did, arise upon its construction. After granting the land, the grantor added, " together with a *liberty of plowing and digging in the land of said deceased, and thereby turning into said Arnold's land, one-half of a small brook,* which runs across the highway which is at the east end of said land."

The judgment of the superior court is therefore affirmed.

In this opinion the other judges concurred, except ELLSWORTH, J., who tried the cause in the court below, and was therefore disqualified.

Judgment affirmed.