HENRY S. BARTHOLOMEW, ADMINISTRATOR, *vs.* HENRY J. MUZZY AND ANOTHER.

Hartford Dist., Oct. T., 1891. ANDREWS, C. J., CARPENTER, SEYMOUR, TORRANCE and FENN, Js.

*L* and *J*, who were husband and wife, occupied together until her death certain premises originally belonging to *L*. *L* many years before had made a warrantee deed of the premises to a third person, who at once conveyed by quit-claim deed all his interest to *J*, in consideration of $1,400, on condition that she should survive her husband, and to *L*, in consideration of $100, on condition that he should survive his wife. Held that, taking into account the relationship of the principal parties and the circumstances, it must be regarded as the intent of the transaction to vest in the husband and wife an equal and undivided interest in the property; and that the language of the deed was sufficient to effectuate that intent.

The deed was in effect a conveyance of the use of the property to them both during their joint lives and the remainder in fee to the survivor.

Such a conveyance of the fee would be valid as a contingent remainder.

It is a familiar rule that a deed shall, if possible, be so construed as to effectuate the intention of the parties.

In arriving at that intention, as expressed in the deed, it is always admissible to consider the situation of the parties and the circumstances attending the transaction, and every part of the writing should be considered with the help of that evidence.

Some time after the conveyance mentioned *L* released all his interest in the premises to a third person, who immediately released all the interest thus acquired to *J*, the wife. Held that, in the absence of all

explanations, these conveyances must be regarded as vesting the entire title in *J*, and that *L* had no further interest in the property, present or future.

At common law, and under our own law, a contingent remainder of the kind held by *L* under the former deed, could be effectually released by him to *J* as life tenant of the particular estate in possession.

It could not affect the case that the release to *J* was not direct, but through a third person.

[Argued October 8th, 1891—decided January 30th, 1892.]

ACTION to recover possession of real estate and for rents and profits; brought to the Superior Court in Hartford County, and tried to the court before *J. M. Hall, J.* Facts found and judgment rendered for the plaintiff, and appeal by the defendants. The case is fully stated in the opinion.

*E. Peck*, for the appellants.

*F. L. Hungerford* and *N. E. Pierce*, for the appellee.

TORRANCE, J. This is an action to recover the possession of certain real estate, brought by the plaintiff as administrator of one Lauren Byington, against the defendants as administrators of Julia P. Byington.

The facts found by the court below which bear upon the questions decided by this court on the appeal, are in substance the following:—From a time prior to June 10th, 1843, until June 28th, 1867, when she died, Lauren Byington and Julia P. Byington were husband and wife, living upon the land in suit, and using also adjoining land of Julia for their common family use. Prior to June 10th, 1843, the title in fee to the demanded premises was in Lauren. On that day he executed and delivered to Edward A. Hart, his wife's brother, a deed of the demanded premises, in the usual form of warrantee deeds, reciting a consideration of fifteen hundred dollars received from said Hart. On the same day Hart executed and delivered a quit-claim deed of the same land back to said Lauren and Julia. It was in evidence in the case that there was no change of possession when the deeds

were executed and delivered; that during their joint lives the possession of Lauren and his wife was continuous and uninterrupted; and that no claim of any right, title or interest in the premises after the deeds were delivered was ever made by Hart.

On the 19th of January, 1854, English & Welch recorded a certificate of lien upon the premises for the sum of two hundred and fifty-three dollars, for labor performed upon and materials furnished for a building thereon. On the 23d day of January, 1854, Lauren executed and delivered to English & Welch, for the recited consideration of four hundred and seventy dollars, a quit-claim deed of the premises, in the usual form, and on the next day English & Welch executed and delivered to Julia a like quit-claim deed of the premises, stating the same consideration. There was no extrinsic evidence in the case explanatory of the certificate of lien or of the two last mentioned quit-claim deeds.

After the death of Julia in 1867, leaving a will which gave to her husband the equitable life use of all her property, Lauren continued to occupy the premises substantially until his death, on the 4th of December, 1889. After his death the administrators of Julia entered upon the premises in question, claiming them as part of Julia's estate, and have ever since retained possession. The court rendered judgment in favor of the plaintiff, as administrator of Lauren, and the defendants, from that judgment, bring this appeal.

The case turns upon the construction of the deed from Hart to Lauren and Julia, of June 10th, 1843, in connection with the quit-claim deeds of Lauren and English & Welch in 1854.

The material parts of the deed from Hart to Lauren and Julia are as follows :—" I, Edward A. Hart, * * * for divers good causes and considerations thereunto moving, especially for fourteen hundred dollars received to my full satisfaction of Julia P. Byington, * * *, wife of Lauren Byington, * * *, have remised, released and forever quit-claimed, and do by these presents, for myself and heirs, justly and absolutely remise, release and forever quit-claim, unto the said Julia P.

Byington, upon the condition only that she outlive and survive her present husband, and in such case and in such case only, to her heirs and assigns forever, all such right and title as I, the said grantor, have or ought to have in or to the following described piece of land," (describing it.) "To have and to hold the premises unto her, the said Julia P. Byington, her heirs and assigns, to the only use of the said Julia P. Byington, her heirs and assigns forever, upon the aforesaid condition, that the said Julia P. Byington do outlive and survive her present husband, to wit, the said Lauren Byington. And in consideration of the sum of one hundred dollars to me paid by the aforesaid Lauren Byington, I have remised, released and forever quit-claimed, and do by these presents for myself and my heirs justly and absolutely remise, release and forever quit-claim, unto the said Lauren Byington, his heirs and assigns, all such right and title as I, the said E. A. Hart, have or ought to have in or to each and every part of the aforesaid described land and buildings, upon the condition that he, the said Lauren Byington, do outlive and survive his said wife, Julia P. Byington ; and it is to be well and expressly understood that the premises aforesaid are to be wholly and absolutely vested in the said Julia P. Byington, her heirs and assigns forever, in case that she do outlive and survive her husband, the said Lauren Byington ; but in case that she, the said Julia Byington, do not, then in such case the premises aforesaid are to be wholly and absolutely vested in said Lauren Byington, his heirs and assigns forever." The conclusion of the deed was in the ordinary form of quit-claim deeds, barring and excluding from the premises Hart and all others claiming under him.

The defendants claim that this deed conveyed to Julia an estate in fee upon a condition subsequent, and that consequently the limitation of a fee afterwards attempted to be made to Lauren by the same deed in the same land is void, because it violates the elementary rule of conveyancing, that a fee cannot by deed be limited after a preceding fee. The plaintiff claims either that the deed conveyed a joint

life estate by implication to the husband and wife, with a contingent fee to the survivor, or that such an estate remained in the grantor as trustee for the husband and wife during their joint lives, and upon the death of one of them the fee vested absolutely in the survivor.

The plaintiff further claims that in either of said alternatives the right of Lauren to the fee was not a present right, or of such a nature that it could be conveyed by his deed to English & Welch; while the defendants contend that in either case Lauren's right to the fee was of such a nature that it was conveyed to English & Welch, and ultimately to Julia, his wife, and that she thereby became vested with all of Lauren's rights in the land. One of the important questions in the case is, therefore, what estate was conveyed to the husband or wife or both by this deed from Hart to them?

At the outset we are compelled to reject the claim of the defendants, that it conveyed a fee to the wife, and then attempted to limit an estate in fee in the husband. If we take the language of the deed itself, without the aid of the circumstances under which it was given, it is hardly possible to take this view of it, and if read, as it ought to be, in the light of those circumstances as found by the court, such a view becomes impossible. The entire deed must be read together. Nothing by it passed to either the wife or husband till it was delivered. The fact that the conveyance is made to the parties separately in the deed, or that the words of release to the wife are written first, is of no special importance. There is in effect but one act of release and one conveyance, and it took effect as to both at the same time, namely, when the deed was delivered.

Looking at the entire transaction of which this deed formed a part, we think it is quite clear that the releasor intended to treat the husband and wife exactly alike. It can, with about as much reason, be claimed that the limitation to the wife was void because it gave her a fee after one had been given to the husband, as that the limitation to the husband was void because it was a conveyance of a fee

to him after one already given to his wife.    What estate then did this deed convey to the releasees named therein?

As already suggested, the deed from the husband to Hart and from Hart to the husband and wife were parts of one single and entire transaction.    Taking into account the relationship of the parties concerned in the transaction, and the circumstances attending it and under which it took place, we are irresistibly led to the conclusion that its main purpose and object was to convey to the wife an estate or interest of some kind in the property of the husband, leaving the rest of the estate ultimately in him.    It was clearly not the main purpose of the transaction to convey anything to the husband, for he already owned the property absolutely; nor to Hart, for he immediately conveys the land back to the husband and wife, and makes no pretense of claim to it thereafter.    Its main purpose was to modify or change the estate of the husband by the amount of that estate which should, as the result of the transaction, become vested in the wife.    We think it is quite clear also, as already hinted, that in this transaction the parties actually intended, as the result of it, to vest in the husband and wife an equal and undivided interest in the property.    Whatever share or interest he conveyed to one, the releasor intended to convey a like share and interest, no more and no less, to the other. This we think is manifest from the language of the deed. And from the language of the deed read in the light of the surrounding circumstances under which it was given, we are led to the further conclusion that the parties concerned actually intended, as the result of this transaction, to vest in the husband and wife an equal and undivided interest in the property during their joint lives and to give the remainder in fee to the survivor of them.

We concede however that it is not enough that the parties had such an intention in fact, unless they have expressed it in some way in this deed.    The question is not what did the parties actually mean to say, but what is the meaning of what they have said.    In the construction and interpretation of written instruments of this kind, it is a familiar rule that

the deed shall, if possible, be so construed as to effectuate the intent of the parties. *Bryan* v. *Bradley*, 16 Conn., 486.

In arriving at the intent expressed or implied in the language used, however, it is always admissible to consider the situation of the parties and the circumstances connected with the transaction, and every part of the writing should be considered with the help of that evidence. *Grey* v. *Pearson*, 6 H. L. Cases, 106 ; *Strong* v. *Benedict*, 5 Conn., 220 ; *Griswold* v. *Allen*, 22 Conn., 98. " The only rule of much value is to place ourselves as near as possible in the seats which were occupied by the parties at the time the instrument was executed ; then, taking it by its four corners, to read it." *Walsh* v. *Hill*, 38 Cal., 487.

The deed in question was evidently not drawn by a skilled conveyancer, but by a person not familiar with matters of this kind, and who found great difficulty in expressing clearly the evident intention of the parties. One skilled in such matters would undoubtedly have carried out this actual intent of the parties by conveying in express words to the husband and wife the use and improvement of the premises during their joint lives, and the remainder in fee to the survivor.

Such a conveyance of the fee would unquestionably be valid as a contingent remainder. " If $A$ and $B$ are tenants for their joint lives, remainder to the survivor in fee, here during their joint lives a remainder is vested in neither, yet on the death of either the remainder instantly vests in the survivor." 1 Swift's Digest, 96. " The fourth class of contingent remainders is where the contingency depends upon the uncertainty of the person who is to take the remainder, either because he is not in being or not ascertained at the time the limitation is made. * * * A grant to $A$ and $B$ for life, remainder to the survivor, would be of this kind." 2 Washburn's Real Prop., 242.

It must be conceded that the deed in question does not in form and in express terms, in accordance with the manifest and actual intent of the parties, convey the use and improvement of the premises to the releasees during their

joint lives, but we think that intention is in substance and effect sufficiently expressed in the deed. Beneath all the verbiage and repetition of the deed it is quite clear that the releasor is then and there to part with all his interest of every kind in the land, and the releasees are then and there to acquire the same, and the language used is sufficient to effectuate that intent.

It may be said, however, that the estate, whatever it was, which the deed attempted to convey to the husband and to the wife, was conveyed to them on condition that one should survive the other, and therefore no present interest passed to either, but a life use at least remained in the releasor. In such case the defendants claim that the conveyance in question violates one of the fundamental rules of the law relating to conveyances and is void.

By the common law any limitation by which an estate of freehold in corporeal hereditaments purports to be so granted as to commence either upon the expiration of a fixed interval of time after the execution of the assurance or upon the happening of some future contingency other than the determination of a precedent estate of freehold, was void in its inception. A limitation by way of contingent remainder which was not immediately preceded by a vested estate of freehold was held to be a violation of this rule, and hence was void in its inception. Challis on Real Prop., 73. The technical and subtile reasons upon which this rule was founded have to a great extent ceased to exist, and whether the rule itself in all cases and under all circumstances would have the controlling force it once unquestionably had we have no occasion here to consider, because we do not think this deed violates the rule in question. Read in the light of the surrounding circumstances the language of the deed does in effect convey to the husband and wife the use of the premises during their joint lives and the fee to the survivor. In effect the releasor says—" I here and now release and forever quit-claim to Julia P. Byington and Lauren Byington all the right, title and interest which I have or ought to have in this land. In case Julia outlives Lauren she is

to have and to hold the land to her and her heirs forever. In case Lauren outlives Julia he is to have and to hold the land to him and his heirs forever." If the deed had been so written there can be no doubt that the language would be held sufficient to effectuate the actual intent of the parties. We read the deed as if it had been so written, and, in doing so, do no violence to its language, for we think this in substance and effect is the meaning of the language used. It is true that the word "condition" is used a number of times in the deed, but it is always used to qualify the event upon which the fee is to belong absolutely to the survivor, and never to qualify the time at which Hart's entire and absolute interest is to pass to the husband and wife.

Under the circumstances we think the deed conveyed to the husband and wife the use of the property during their joint lives, and a contingent remainder to the survivor.

The next question is, whether the husband conveyed and the wife ultimately acquired all his rights in the premises, as the result of the transactions between the husband and wife and English & Welch in 1854. As we have seen from the citations hereinbefore made from Swift and Washburn, the remainder limited by the deed in question falls within the class called contingent remainders. In 1854 it still belonged to this class. If, at the time Lauren delivered his quit-claim deed to English & Welch in 1854, the remainder had been what is called a vested remainder in him, subject only to the termination of a life estate in his wife, there can be no doubt that his deed would have conveyed such interest to the releasees. The claim of the plaintiff is, that the remainder to Lauren was, at the time of his deed to English & Welch, a contingent remainder of such a nature that it was not conveyed by his quit-claim deed.

The rule at common law undoubtedly was, that both contingent remainders and executory interests were only possibilities, and therefore were not assignable *inter vivos;* though they might, as possibilities coupled with an interest, be devised under the English statute of wills; or they might be released at common law, or bound by a conveyance oper-

ating by way of estoppel, and contracts and assurances re-
lating to them for valuable consideration might generally
be enforced in equity.    Challis on Real Prop., 52; *Smith* v.
*Pendell*, 19 Conn., 112.

At the present time however, even where the common law
rule as to the assignability of such interests prevails, it is not
universally true that they are not assignable *inter vivos*.
Thus Washburn says :—"But it is now settled that where the
contingency upon which the remainder is to vest is not in
respect to the person, but the event, where the person is
ascertained who is to take if the event happens, the remain-
der may be granted or devised, and the grantee or devisee
will come into the place of the grantor or devisor with his
chance of having the estate." 2 Washburn's Real Prop., 240.

A contingent remainder like the one here in question is
in some respects peculiar and different from others falling
within its class, but whether it is in the ordinary sense as-
signable or not we have no occasion at present to consider.
Even at common law, and under our law also, a contingent
remainder, even of this kind, could be effectually released to
the tenant of the particular estate in possession.    *Smith* v.
*Pendell*, 19 Conn., 112.

As before stated, the husband in 1854 conveyed in form
all his interest in the land to English & Welch, and they
immediately conveyed in like manner all their interest to
the wife.    We think the only reasonable view that can be
taken of the transaction, in the absence of all explanation,
is that it was intended as a release to the wife of all the
husband's interest, present or future, in the land under the
Hart deed.

At common law a husband could not convey or release
directly to his wife, but, by immemorial usage in this state,
he could do so indirectly through the medium of third par-
ties.    1 Swift's Digest, 39.    Had not the relation of husband
and wife subsisted between these parties in 1854, Lauren
could have released to Julia directly, and such release would
have been a valid and effectual release of all his interest,
present or future, in the land under the Hart deed.    The

fact that because of such relation it was deemed necessary to accomplish the same purpose in an indirect way through third parties, can we think make no difference in the result.

We hold, therefore, that in 1854 the wife became possessed of all the rights of English & Welch in the premises, and of all the present or future rights and interests of the husband under the Hart deed. As there is no claim or pretense that since that time the husband acquired any other rights or interest in the demanded premises save what he had by law as husband, and the equitable life use which he had under his wife's will, it follows that at his death no right or interest in the demanded premises of the kind claimed in this suit remained to his heirs or personal representatives.

For these reasons there was error in the judgment appealed from, and it is reversed.

In this opinion the other judges concurred.