## Bruno Faiola *v.* Guido J. Faiola et al.

Alcorn, House, Thim, Ryan and Covello, Js.

Argued November 9, 1967—decided January 4, 1968

*Henry D. Marcus,* with whom, on the brief, was *Morris W. Fuhr,* for the appellant (plaintiff).

*Bourke G. Spellacy,* with whom were *Thomas J. Shortell* and, on the brief, *Joseph Adinolfi, Jr.,* and *Peter G. Kelly,* for the appellees (defendants).

House, J. This action arose out of a family dispute over the ownership of, and the distribution of rentals received from, a parcel of land with the buildings thereon located in Farmington. The plaintiff brought suit against his father, Venanzio, and his three brothers, Guido, Vincent and Armando. Briefly stated, he claims that he, Guido and Armando together owned the property in 1951, at which time they conveyed it by quitclaim deed to their father, Venanzio, with the intention and agreement that the deed would vest in the grantee only a life estate and that the property would revert to them on his death if not sooner reconveyed upon request; that in 1959, Venanzio wrongfully conveyed the property to the defendants Guido and Vincent; that, in 1961, the plaintiff was fraudulently induced to enter into an agreement with his three brothers which provided that Vincent and Guido would continue to hold title and that, if the property should be sold or rented, the net monthly rental or sale proceeds would be divided equally among such of the four

brothers as should be living at the time of such distribution; and that the plaintiff has never received any distribution or accounting. On the basis of the allegations thus briefly summarized, the plaintiff sought various forms of relief: an accounting; the appointment of a receiver of rents; a judgment voiding the 1961 agreement; an order that the defendants reconvey to the plaintiff his rightful title and interest in the land; an order that the defendants produce the 1961 agreement and deliver it up to be canceled; a judgment determining the rights in and to the land and settling the title thereto; a partition and sale of the land; $100,000 damages; and such further equitable relief as the court should deem necessary.

The defendants pleaded by way of a general denial and the special defenses of laches and estoppel. They did not comply with the directive of § 47-31 of the General Statutes, which requires each defendant in an action to quiet title to state in his answer whether or not he claims any interest in the property and, if so, the nature and extent of the interest or estate claimed and the manner in which the interest claimed was derived. We cannot ascertain whether the failure to comply was a result of the confused state of the pleadings or the plaintiff's multifarious claims for relief. The court also did not comply with the further statutory directive of § 47-31 of the General Statutes that it "render judgment determining the questions and disputes and quieting and settling the title to such property." See *Marquis* v. *Drost,* 155 Conn. 327, 330, 231 A.2d 527; *Lake Garda Improvement Assn.* v. *Battistoni,* 155 Conn. 287, 293, 231 A.2d 276; Practice Book, Form No. 512. The judgment simply found the issues for the defendants. As a result

of the plaintiff's motion for a special finding pursuant to § 52-226 of the General Statutes, however, the record contains a statement of the material facts on which the judgment was based. This special finding became a part of the record and is an incident to the judgment. *Carvette* v. *Fidelity & Deposit Co.*, 152 Conn. 697, 698, 204 A.2d 409; Maltbie, Conn. App. Proc. § 151. It discloses the court's conclusion that title to the subject property was vested solely in Vincent and Guido and that the 1961 agreement executed by the four brothers was both invalid and ineffective to give the plaintiff any legal or equitable interest in the land.

The appeal presents two major questions among the many assignments of error claimed by the plaintiff: (1) Did the court properly conclude that the 1951 quitclaim deed was valid and conveyed to Venanzio all the interest which the grantors had in the land so that his 1959 deed to Guido and Vincent vested title to the land in them? (2) Did the court properly conclude that the 1961 agreement between the four brothers was both invalid by reason of its defective execution and ineffective to create any interest in the land, legal or equitable, in the plaintiff? We will discuss them in that order.

The portion of the finding relevant to the 1951 deed is not subject to any material correction. There was conflicting testimony, and the court found the testimony of the defendants to be more credible than that of the plaintiff. It is for the trial court to determine the credibility of witnesses. We do not retry facts or pass upon questions of credibility. *Krattenstein* v. *G. Fox & Co.*, 155 Conn. 609, 611, 236 A.2d 466; *Romaniello* v. *Dyna Distributors, Inc.*, 154 Conn. 605, 606, 227 A.2d 430. The court found that in 1947 Venanzio purchased the land

with money from his savings, and with his approval
title was taken in the names of the plaintiff,
Armando and Guido. The property was acquired
for the purpose of constructing thereon an automo-
bile service and repair station. Venanzio took a
leave of absence from his employment and in addi-
tion to the work done with his own hands acted as
a general contractor and supervisor. He worked
full time on the premises, assisted by his sons in
their spare time. After construction was completed
in 1948, the plaintiff, Armando and Guido operated
the service and repair station for almost four years
but were not as successful as they had hoped and
decided to deed the land to their father, Venanzio.
Prior to the conveyance, the plaintiff had obtained
other employment and had ceased working at the
premises. He freely assented to the transfer to
his father. Although Venanzio was the sole grantee,
both the granting and habendum clauses of the deed
ran to him "and unto his survivor and unto such
survivor's heirs and assigns." Contrary to the
plaintiff's claims, the court expressly found that
there was no specific or implied agreement that the
transfer convey only a life estate or that Venanzio
would reconvey any interest to any of the sons upon
their request. In 1959, Venanzio quitclaimed his
interest in the land to Guido and Vincent. Upon
these facts and from the actions of the plaintiff on
several occasions, which we need not recite, the
court concluded that the plaintiff between 1951 and
1961 did not assert any claim or title to the land,
that the 1951 deed was a valid deed conveying the
interest of the plaintiff and his two brothers to
Venanzio, and that Venanzio was the owner until
1959, when he conveyed his interest to Guido and
Vincent, who now have sole title to the land.

The 1951 deed was obviously unartfully drawn by an unskilled conveyancer. It contained the usual words of full release: "so that neither the said Guido Faiola, Armando Faiola and Bruno Faiola nor any other person or persons in their name and behalf, shall or will hereafter claim or demand any right or title to the premises or any part thereof; but they and every of them by these presents be excluded and forever barred." There was no reservation of any reversionary interest. There was a patent ambiguity in the granting and habendum clauses. We find no error in the court's conclusion that, under the peculiar circumstances of the present case, the deed conveyed the fee despite the words of survivorship when only one grantee was named.

"Our basic rule of construction is that recognition will be given to the expressed intention of the parties to a deed or other conveyance, and that it 'shall, if possible, be so construed as to effectuate the intent of the parties. . . . In arriving at the intent expressed . . . in the language used, however, it is always admissible to consider the situation of the parties and the circumstances connected with the transaction, and every part of the writing should be considered with the help of that evidence.' *Bartholomew* v. *Muzzy*, 61 Conn. 387, 393, 23 A. 604; *Luce* v. *Niantic Menhaden Oil & Guano Co.*, 86 Conn. 147, 149, 84 A. 521; *B. T. Harris Corporation* v. *Bulova*, 135 Conn. 356, 360, 64 A.2d 542. But 'it is not enough that the parties had . . . [a particular] intention in fact [that is, as a unanimous state of mind], unless they have expressed it in some way in . . . [the] deed. The question is not what did the parties actually mean to say, but what is the meaning of what they have said.' *Bar-*

*tholomew* v. *Muzzy,* supra, 392; *Lampson Lumber Co.* v. *Caporale,* 140 Conn. 679, 682, 102 A.2d 875." *Dennen* v. *Searle,* 149 Conn. 126, 131, 176 A.2d 561. In the present case, not only did the court have evidence as to the situation of the parties and the full circumstances of the conveyance but the plaintiff himself by his complaint put directly in issue the actual intention and agreement of the parties. He expressly alleged that it was "the intention and agreement of all concerned therewith that said deed would vest a legal life estate in said grantee, that it would revert to his said three sons upon his death and that said Venanzio Faiola would immediately reconvey to any or all of his said sons their respective undivided one-third interests upon request, holding said record title in trust for his three sons." Over the objection of the defendants, he was permitted to testify to the truth of these allegations. The court's memorandum of decision indicates that this testimony by the plaintiff was "utterly unconvincing" and, on the basis of contradictory evidence, it concluded that the plaintiff, Armando and Guido decided to deed the land to their father and that, despite the peculiar ambiguities in the deed, they conveyed a fee to him. "Where a deed is ambiguous the intention of the parties is a decisive question of fact. *Gioia* v. *Annunziata,* 102 Conn. 52, 56, 127 A. 921." *Staff* v. *Hawkins,* 135 Conn. 316, 319, 64 A.2d 176. "In case of doubt, the grant will be taken most strongly against the grantor." *Sweeney* v. *Landers, Frary & Clark,* 80 Conn. 575, 579, 69 A. 566; 1 Patton, Land Titles (2d Ed.), p. 505. We cannot say that in the light of all the evidence before it the court could not reasonably and logically reach the conclusions it did.

We have examined the remaining assignments of

error relating to this aspect of the appeal which have been briefed and find that they are without merit. The only evidential ruling which has been assigned as error and has been briefed is not presented in such a form that it can be passed upon. Practice Book § 648. Accordingly, on this aspect of the appeal, we find no error in the portion of the judgment which determined that title to the land remains solely in Vincent and Guido Faiola.

The second major question raised on the appeal concerns the court's rulings and conclusions with respect to the December 7, 1961, agreement between the plaintiff and his three brothers. This agreement recited that Vincent and Guido were the holders of record title to the property, that Armando and the plaintiff "claim to have an interest in said piece or parcel of land, which said interest does not appear as of record" and that all of them agreed that Armando and the plaintiff "have a financial interest in said land which requires protection." Then, after providing that "[t]itle to the said property shall continue to remain vested as of record appears, and this agreement shall not be construed to in any way divest, diminish or disturb said title, nor shall it be construed as an encumbrance upon said property," the agreement provided that Vincent and Guido should continue to hold title and that, if the property should be sold or rented, the net monthly rental income or sale proceeds should be divided equally among such of the four brothers as should be living at the time of any distribution. The finding discloses that the property presently has a reasonable value of $89,000; that the reasonable net proceeds from its rental would be $8900; that Vincent and Guido formed a corporation known as Faiola Brothers Imported Motor Cars, Inc., to

which they have leased the property; that they have mortgaged the property and with the proceeds have purchased six acres of land in their own names on the Berlin Turnpike; and that each has reported on his federal income tax returns his taxable income received from the property. It does not appear that there has ever been any accounting for or distribution of the net rents received from the property.

On the trial, evidence was presented regarding the circumstances under which the agreement was executed. The court found that five copies of the agreement were signed by all four brothers, who were of legal age to contract. The agreement also bears the signatures of purported witnesses and the signature and seal of a licensed notary public beneath an acknowledgment clause. The court, however, found that the agreement was in fact not executed in the presence of the notary public who purported to take the acknowledgment of the parties or in the presence of two of the purported witnesses. For these reasons alone, the court concluded that the instrument was invalid by reason of its defective execution and ineffective to give the plaintiff any legal or equitable interest in the land. The court went further and, at the close of the plaintiff's case on direct, indicated to the defendants that they need not offer any evidence tending to invalidate the agreement and that, despite objection by the plaintiff, it would grant the defendants' motion for judgment voiding the agreement.

The court was in error in concluding that the agreement was invalid and void solely because of the irregularities in its execution and acknowledgment. The instrument was not a grant or conveyance of any interest in real estate, and it was not necessary that it be executed in accordance with

the statutory requirements for the execution of deeds. See General Statutes § 47-5. It expressly provided that no change in title should be effected by the agreement and that it should not be construed "to in any way divest, diminish or disturb said title, nor shall it be construed as an encumbrance upon said property." Rather, it was a written contract to divide a fund of money representing income by way of rental from the property and the proceeds received from its sale. The subject matter of the agreement was, not land or any interest therein, but a fund of money representing profits from a joint enterprise in the nature of a partnership. *Bunnel* v. *Taintor,* 4 Conn. 568, 573. Although this enterprise was one which contemplated and involved the management of real estate and a division of funds derived from its rental and sale, it was, not the real estate, but the fund in which the plaintiff claims an interest by reason of the agreement. *Maguire* v. *Kiesel,* 86 Conn. 453, 457, 85 A. 689.

We conclude therefore that the court should not have ruled that the agreement was invalid and void because of irregularities in its execution when such irregularities pertained only to matters not essential to its valid execution and binding effect as a contract. It is therefore unnecessary for us to consider the plaintiff's remaining assignments of error relative to this aspect of the appeal. A new trial will be necessary. Since we have found no error in the portion of the judgment which determined that title to the property was vested in Guido and Vincent by virtue of the 1959 deed to them from Venanzio, it is unnecessary to relitigate that portion of the plaintiff's claims, but the remaining issues must be redetermined on a new trial.

There is error in part, the judgment is affirmed

except as regards the validity, interpretation and effect of the December 7, 1961, agreement and as to those issues only a new trial is ordered.

In this opinion the other judges concurred.