CLINTON E. FRENCH *v.* PAUL OBERREUTER ET AL.
(No. 105695)

CLINTON E. FRENCH *v.* PAUL OBERREUTER, EXECUTOR
(ESTATE OF IRMA S. FRENCH) (No. 108479)

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued October 2—decided November 20, 1968

*William A. Phillips,* for the appellant (plaintiff).

*John W. Barnett,* with whom, on the brief, was *Thayer Baldwin, Jr.,* for the appellees (defendants).

ALCORN, J.  Appeals from the judgments in two cases have been taken by the plaintiff and, on stipulation of the parties, have been combined in a single record.  The plaintiff married Irma Swift Oberreuter on October 29, 1949, and she died on March 7, 1962.  It was a second marriage for each.  The named defendant is her son by a prior marriage and is the executor and trustee named in her will.  For convenience he will be referred to hereinafter as the defendant.

On October 20, 1964, the plaintiff brought an action against the defendant, individually and in his fiduciary capacity, seeking $200,000 damages or an accounting for and a reconveyance of moneys and property which the plaintiff claimed to have transferred to Irma during their marriage at her request and on her representation that she would invest them for their mutual benefit but which she had, in breach of her trust, placed in her own and the defendant's name or the survivor of them.  The defendant denied that the claimed transfers were made in trust, denied the alleged breach of trust and pleaded, as special defenses, the Statute of Limitations, laches, the failure to present a claim against the estate, and payment.  On these issues, the court rendered judgment for the defendant, and the plaintiff has appealed.

On August 3, 1965, the Probate Court for the district of Milford approved and allowed the final administration account filed by the defendant for the estate of Irma Swift French, and, on August 30, the plaintiff appealed to the Superior Court.  The fifteen reasons of appeal complain, in substance, of

the executor's failure to comply with the terms of the will, the failure to pay the plaintiff an allowance ordered by the Probate Court, the improvident sale of real estate without Probate Court approval, the misapplication of income and the proceeds of the sale, the improper liquidation of a mortgage, the allowance for expenses, and that the account showed that the estate was not fully settled. On these issues also the court rendered judgment for the defendant, and the plaintiff has appealed.

The court's finding is not subject to correction in any material respect. Errors assigned in findings of subordinate facts and in rulings on evidence are not pursued in the brief and need not be considered. *Wood* v. *Wilton*, 156 Conn. 304, 305, 240 A.2d 904; *Johnston Jewels, Ltd.* v. *Leonard*, 156 Conn. 75, 77, 239 A.2d 500.

The issue in the first case is whether the facts, as found by the trial court, support the conclusion reached by the court that the transactions between the plaintiff and his wife did not give rise to the trust relationship which the plaintiff claimed for them. This we must decide on the facts found by the trier. We do not retry facts or determine the credibility of witnesses. *Faiola* v. *Faiola*, 156 Conn. 12, 15, 238 A.2d 405.

The court has found that, at the time of his marriage to Irma, the plaintiff was conducting a marine supply business in Milford through The C. E. French Company, a corporation in which he owned all but two shares of the stock. His residence, a brick building and warehouse used in the marine supply business, the land on which they stood, and adjacent lots were owned by that corporation. He also owned all but two shares of the stock of Wildman's Landing Corporation, which owned about ten

acres of land, including a lakeside resort development, near Danbury. He also had other funds, properties and investments.

Irma was a voice teacher, and she continued that occupation after her marriage to the plaintiff. During the week, she lived in a studio maintained by her in New York and spent the weekends with the plaintiff in Milford. She was sixty-eight years old at the time of her death in 1962.

Irma interested herself in the plaintiff's business affairs in the summer of 1949, particularly in their joint but unsuccessful effort to retain, for The C. E. French Company, a franchise from the Evinrude Motor Company. Following their marriage, they jointly endeavored to sell some of the realty owned by Wildman's Landing Corporation.

The court expressly discredited claims made by the plaintiff that The C. E. French Company had grossed three-quarters of a million dollars in one year; that his net worth at the start of 1949 was $207,107.46; that he had placed funds in Irma's safe deposit box to which she, but not he, had access; that he had always left at least $20,000 there; that Irma had said "we might as well get married and go through it together as to work it out alone . . . you need someone like me to work with you"; that she had assured him that he could trust her, and, by turning funds over to her, they would be safely kept and protected from creditors and would be invested for their mutual old age; and that, when he assigned mortgages to Irma, she had said: "We should have some things that are not in the name of the corporation, and due to your eye condition we should start protecting ourselves with something for our old age. I can handle the keeping track of the payments for you and the mortgages and see that

the payments are made on time and interest properly collected and keep the proper records for you and we will start a trust between us for our old age."

The court found that the plaintiff and his wife had made mutual wills in December, 1949, in which each had left his entire estate to the other, but it discredited his claim that he had not changed his will or that he did not know, until Irma's death, that she had changed her will. The court found, however, that Irma had executed a new will in 1961 about which more will be said later.

The transactions which were in issue during the trial involved the sale of, and the disposition of the proceeds from, various properties of The C. E. French Company and the Wildman's Landing Corporation. The loss of the Evinrude franchise by The C. E. French Company in 1949 was a financial blow, and Irma made advances to the company which totaled, with interest, $20,293.04 as of August 31, 1954. A mortgage on the corporate property secured $12,500 of this amount. The company's warehouse and the land on which it stood were sold, and the proceeds were turned over to Irma in part payment of the company's indebtedness to her. The mortgage was liquidated, and $832.41, which was still owing on the indebtedness, was transferred by Irma from a bank account in which the plaintiff had an interest to an account owned by her and the defendant. Thereafter, the remaining real estate owned by the corporation was transferred to Irma for $100 and "other good and valuable considerations", after which she advanced or obligated herself to the extent of $43,772.45 to or for the benefit of the corporation. From then until her death, Irma leased the business portion of the premises to the company for a rental sufficient to cover taxes, insurance and

amortization on all the realty, and the plaintiff and Irma occupied the residence rent free. Irma sold a portion of the property for $30,000 in 1960, using a part of the proceeds to reduce the principal balance of mortgages on the property acquired from the company. The rest of the property stood in her name at the time of her death subject to a bank mortgage of $9771.97.

The plaintiff, with his mother, had sold certain other real estate and had received notes secured by mortgages aggregating $25,000 in connection with the sale. He assigned these notes and mortgages to Irma and reported the transaction to the Internal Revenue Service as a gift. Irma later received the proceeds of the mortgages and used them for investment and reinvestment. He also gave Irma an undisclosed number of shares of Outboard Marine Motor stock. Items received by Irma were variously held by her in her own name, in her name and the plaintiff's, and in her name and the defendant's.

The court concluded that the plaintiff failed to prove that he had transferred any funds or property to Irma under the terms of a trust, express or implied, or as his agent; that the transfer of the $25,000 in mortgages was an outright gift; and that the transfers from The C. E. French Company were in partial satisfaction of loans or other valuable considerations furnished by Irma to the company.

These conclusions are fully supported by the subordinate facts, and consequently the judgment in the first case cannot be disturbed.

We turn then to the issues raised in the appeal from probate. The material facts found by the court relating to this appeal are as follows. At her death, Irma left a will which provided: "I order and direct

that all my just debts, including taxes upon real property and funeral expenses, be paid as soon as may be convenient after my decease." The will left her tangible personal property and the residue of her estate to the defendant, who was also named executor. The will also contained the following provision: "FOURTH: I have made no provision in this my Will, except as provided in this paragraph, for my husband, Clinton E. French, because of the fact that over the years that we have been married he has proven himself to be unable to earn a livelihood for either himself or for me.

"However, I am the owner of the premises located at 56 Bridgeport Avenue, Milford, Connecticut, and I direct my Executors or Trustees under this my Last Will and Testament, to sell said property as soon as possible after my decease, and I bequeath to my Trustee hereinafter named, the proceeds of the sale of said property; to hold, manage, invest, and re-invest said proceeds and to collect the income therefrom and pay over the net annual income in at least monthly installments to my said husband, who shall be the sole beneficiary thereof, for the term of his life, and also to apply for his support and maintenance during said period so much of the principal thereof as shall be deemed advisable in the sole discretion of my said Trustee; and upon my said husband's death the principal of said trust shall fall into and become part of my residuary estate."

Irma's estate in Connecticut consisted solely of the portion of the real estate conveyed to her by The C. E. French Company which she had not disposed of as recited above. This property was inventoried for $70,400 and was, at her death, still subject to the bank mortgage of $9771.97. This was the property described in the fourth paragraph of her will. Her

estate in New York consisted of personalty specif-
ically bequeathed to the defendant, and securities
and bank accounts owned jointly with the defendant
with the right of survivorship. Her total estate was
inventoried at $108,940.47. Her will was admitted
to probate in New York, and the defendant was ap-
pointed and qualified as executor on March 26, 1962.
He was also appointed and qualified as ancillary
executor by the Probate Court in Milford, Con-
necticut.

The defendant made diligent effort to sell the
Connecticut real estate, and, after efforts to obtain
a firm offer near the appraised value had failed,
he leased the property, on November 1, 1963, for
one year with an option to purchase at a price not to
exceed $60,000. The lease required the tenant to
maintain the property, but the defendant was em-
powered by Irma's will to repair real property held
by him as executor and was given broad powers of
management. In leasing the property, the defendant
had represented that the roof was sound, and, dur-
ing the term of the lease, he spent $980 to repair
the roof. None of the rents for the property were
paid to the plaintiff. On October 15, 1964, the de-
fendant sold the real estate to the lessee for $50,000,
less $2500 for a parcel to which he could not convey
good title and $200 because he could not give posses-
sion on the closing date owing to the plaintiff's occu-
pancy of the house. It was agreed that the $2500 be
held in escrow pending execution and delivery of a
correcting deed by The C. E. French Company. The
proceeds of the sale were deposited in savings ac-
counts in the defendant's name as trustee of the
trust under Irma's will, and the defendant paid to
himself individually all interest earned thereon.

The Probate Court had ordered an allowance of

$1800 paid to the plaintiff, and this had not been paid. Nevertheless, the defendant filed the final account which is the subject of this appeal. The account showed a portion of the real estate to be unsold and credited the defendant, as ancillary executor, with the payment of the mortgage on the property sold amounting to $9077.28, expenses incurred in "maintaining and operating the premises" amounting to $7178.70, the expense of a new roof amounting to $980, and $1348.65 for attorneys' fees and expenses. The defendant, as ancillary executor, distributed no funds or property to the plaintiff except $20.40.

On these facts, the trial court dismissed the appeal from the order of the Probate Court allowing the account. The court concluded that the defendant properly credited himself with the payment of the mortgage on the real estate from the proceeds of the sale of the mortgaged property, with the payment for the roof repairs and for counsel fees, and for "distributions to the defendant as trustee under the will of the decedent." The court stated no conclusion as to the defendant's disposition of the bank interest received from the proceeds of the sale of real estate and no conclusion indicating that it considered the fact that the Probate Court's order to pay an $1800 allowance to the plaintiff had not been complied with or the fact that a portion of the real estate was still unsold.

The parties treat the provision made for the plaintiff in the fourth article of Irma's will as a devise of realty. The plaintiff claims that the defendant acted contrary to the mandate of § 45-175 of the General Statutes in paying the mortgage debt from the proceeds of the sale of the realty when there was other estate sufficient and available with which

to make the payment and which was not specifically devised or bequeathed. The defendant claimed to have established that "practically all" of the New York estate was jointly owned property unavailable for the satisfaction of the Connecticut mortgage.

Relying on *Higinbotham* v. *Manchester,* 113 Conn. 62, 68, 154 A. 242, the Superior Court found that § 250 of the New York Real Property Law should be read into Irma's will as an expression of her intent. The pertinent portion of the statute is quoted in the footnote.[1] In the *Higinbotham* case, we held that a Connecticut testator is presumed to have intended that the effect of the terms of his will on real property situated in another state shall be governed by Connecticut law. In the present case, both Irma's will and the deed to her of the Connecticut real estate described her as a resident of New York. The court made no express finding either as to her residence or her domicil. The implication from its treatment of the *Higinbotham* case and the New York statute, however, is that the court considered her as a New York resident. If she was to be treated as a Connecticut resident, it is clear that General Statutes § 45-175, rather than the New York statute, would govern the effect of the terms in her will according to her presumed intention. *Higinbotham* v.

---

[1] "Where real property, subject to a mortgage executed by any ancestor or testator, or subject to any other charge, including a lien for unpaid purchase money, descends to a distributee, or passes to a devisee, such distributee or devisee must satisfy and discharge the mortgage or other charge out of his own property, without resorting to the executor or administrator of his ancestor or testator, unless there be in the will of such testator a direction, expressly or by necessary implication, that such mortgage or other charge be otherwise paid. . . ." N.Y. Real Prop. Law § 250, as amended by N.Y. Laws 1946, c. 265 (repealed by N.Y. Laws 1965, c. 588 § 2; see N.Y. Deced. Est. Law § 20 [now N.Y. Estates, Powers and Trusts Law § 3-3.6 (a)]).

*Manchester,* supra, 66. The lack of any explicit finding by the court as to Irma's residence becomes insignificant, however, in the light of the fact that, even if she was assumed to be a New York testatrix, the allocation of the burden of the mortgage debt is, according to the law of that state, to be governed by the law of Connecticut, the situs of the realty securing the mortgage, in the absence of a declaration in the will that New York law shall govern. *Matter of Vanderbilt,* 187 App. Div. 716, 719, 175 N.Y.S. 863, aff'd, 228 N.Y. 517, 126 N.E. 924; *Matter of Blackinton,* 153 Misc. 580, 581, 275 N.Y.S. 544; N.Y. Deced. Est. Law § 47, as amended (now N.Y. Estates, Powers and Trusts Law § 3-5.1 [b] [1], [h]). There was no direction in Irma's will that the New York statute relied on by the Superior Court should govern. Therefore, even if the New York statute could properly be considered pertinent, the liquidation of the mortgage on the real estate sold by the defendant should nevertheless be controlled by General Statutes § 45-175.

The court has found that the gross estate was $108,940.47, of which the real property accounted for $70,400. In the absence of a finding that no part of the $38,540.47 difference was available for liquidating the $9771.97 mortgage, the court erred in concluding that the defendant was entitled to credit himself with having paid the mortgage indebtedness from the proceeds of the sale of the mortgaged property.

The court also was in error in concluding that the defendant had established his right to a credit for counsel fees and expenses in the amount of $1348.65. The defendant, as executor, had the burden of justifying the allowance of this claimed credit. *Reiley* v. *Healey,* 124 Conn. 216, 222, 198 A. 570. The court

found that the item represented a payment to a New York law firm for services "in connection with the sale and administration of real property." It also found that the same firm had billed an additional $5000 to the estate. The implication from the context is that the $5000 charge was for services in connection with the New York portion of the estate, but there is no specific finding to this effect. The court found that legal services were performed for the executor "in connection with the Connecticut aspects of the estate" and that the charge of $1348.65 was an amount "usually charged" by the attorney "for similar work." The court has failed to find what the services consisted of or that the charge for them was reasonable. It also failed to find that the payment was made by the executor in good faith. *Hewitt* v. *Beattie,* 106 Conn. 602, 613, 138 A. 795. Consequently, the finding does not support the conclusion that the defendant has justified the allowance of this claimed credit.

No extended discussion is necessary concerning the impropriety of allowing a final account which disclosed the executor's failure to comply with a Probate Court order to pay an allowance of $1800 to the plaintiff; the executor's payment to himself of income which, by the terms of the will, should have been paid to the plaintiff; and that a portion of the real estate which the will had directed to be sold had not been disposed of.

The court erred in dismissing the appeal from the allowance of the final account.

There is no error in the first case (No. 105695); there is error in the second case (No. 108479), the judgment is set aside and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.