CORNWELL and another *against* LEE and others.

Where two joint tenants united in a bill in chancery for the removal of incumbrances upon their common property, to prevent a suit against them as joint occupants and to quiet them in their joint possession ; it was held, that the plaintiffs, being jointly interested in the attainment of these objects, it was proper for them to join in bringing the suit ; and the bill, therefore, was not bad for multifariousness.

Nor is such bill obnoxious to the objection of multifariousness, because a prior mortgagee of the property in question was made a party defendant with those against whom relief was principally sought ; it being a long established and well settled rule in chancery, that all persons materially interested in the subject matter ought to be made parties to the suit, in order that complete justice may be done and a multiplicity of suits avoided.

THIS was a bill in chancery, brought by *George Cornwell* and *William B. Booth,* for an injunction and other relief.

The bill stated the following case. The plaintiffs are the joint owners of a piece of land in *Berlin,* with the buildings standing thereon and the water privileges attached thereto. In 1827, *Thomas Lee,* since deceased, sold the premises to *Theodore C. Bronson,* and conveyed them, by a deed, to which

there was a condition securing to the grantor the purchase money. In 1835, while this deed was unrecorded, *Samuel Booth*, wishing to purchase one undivided half of the premises, and being ignorant of any incumbrance thereon, applied to *Lee* to know if he had any claim upon the premises, informing him, at the same time, that he (*Booth*) was about to purchase of *Bronson* one half the premises. *Lee* declared that he had none. *Booth* then made the purchase, for a full consideration. In 1336, *Cornwell*, one of the plaintiffs, wishing to purchase the other undivided half of the premises, and not knowing of any incumbrance thereon, was informed by *Lee*, that there was none; and thereupon, *Cornwell*, relying upon such information, made the contemplated purchase. His interest has since been purchased of him, by *William B. Booth*, one of the plaintiffs. The deeds given to these purchasers, were duly recorded.

Previous to the purchases by *Cornwell* and *Booth*, *Bronson* had mortgaged the premises to *Electa Whittlesey*, since deceased, to secure to her the payment of 500 dollars. This mortgage debt is still due and unpaid.

*Lee*, previous to his death, conveyed his interest in the premises and his mortgage debt, together with his other property, to *Ira E. Smith* Esq., in trust for his creditors, under the statute of 1828.

At the times when *Cornwell* and *Booth* purchased the premises of *Lee*, he had not, in fact, any incumbrance thereon, his debt against *Bronson* having been previously paid; and neither he, nor any of his representatives, ought to be permitted now to claim or hold any incumbrance thereon. But he, before his death, did claim, and his representatives ever since have claimed, and still claim, that the mortgage debt originally due from *Bronson* has never been paid, and is now in full force against him, and against the premises. An action of ejectment, moreover, was commenced by *Lee*, before his death, upon said mortgage title, against *Cornwell* and *Booth*, to obtain possession of the premises; which action has been prosecuted, by the representatives of *Lee*, since his death, who threaten to enforce payment of said pretended mortgage debt out of the premises.

The plaintiffs thereupon prayed the court to restrain the representatives and heirs of *Lee* from making further claim,

in court or elsewhere, upon said mortgage deed or the premises; and to order them to release the premises to the plaintiffs, or to the representatives of *Electa Whittlesey*; the plaintiffs paying to them the mortgage debt due to them.

The representatives of *Lee* and of Mrs. *Whittlesey* were made parties, defendants.

To this bill there was a demurrer; and the case was thereupon reserved for the advice of this court.

*Hungerford,* in support of the demurrer, contended, 1. That the plaintiffs could not unite in bringing this bill, their titles and interests being distinct. *Booth* purchased in 1835; *Cornwell,* in 1836. The former may have a good equitable title, and the latter none; and so *vice versa.* They have no joint interest in the relief sought. *Cornwell* has no interest in having a conveyance made to *Booth*; and *Booth* has none in having a conveyance made to *Cornwell.* One of the plaintiffs may be equitably entitled to have *Lee's* claim postponed to his, while the other has no such right. So ejectment may lie against one, and not against the other. On this account, therefore, the bill is bad for multifariousness. *Coop. Eq. Pl.* 182. Nor is the case within any of the established exceptions. *Brinkerhoff* & al. v. *Brown* & al. 6 *Johns. Ch. Rep.* 139. 151. 1 *East,* 226. citing *Mitf. Pl. ch.* 2. *s.* 2. *part* 3.

2. That the legal representatives of *Electa Whittlesey* could not be joined with the other defendants, and made parties to the bill. If the plaintiffs wish to redeem her mortgage, let them bring their bill for that purpose; but in this the representatives of *Lee* have no common interest with her, or her representatives. A bill to redeem the *Whittlesey* mortgage cannot be united with a bill for a conveyance from *Lee's* representatives and an injunction against further proceedings at law by them. On this ground, also, the bill is bad for multifariousness. *Coop. Eq. Pl.* 182. *Coe* & al. v. *Turner* & al. 5 *Conn. Rep.* 86. *Boyd* v. *Hoyt* & al. 5 *Paige* 65. *Brinkerhoff* & al. v. *Brown,* 6 *Johns. Ch. Rep.* 139. 1 *East* 226. per Lord *Kenyon,* Ch. J.

3. That if the proper parties are before the court, still the plaintiffs have come prematurely. They have no right in equity until the *Whittlesey* debt is paid. They do not show even a tender or offer, or aver a readiness to pay.

*Hartford,*
June, 1842.

Cornwell
*v.*
Lee.

*W. W. Ellsworth,* contra, after remarking, that this was an application, by two joint tenants, to remove the incumbrances upon their entire common property, to prevent a joint suit against them upon the outstanding title which is threatened, and to quiet their common title which is now under a cloud ; contended,

1. That the plaintiffs might well join in such application. In the first place, the plaintiffs, as joint tenants, are jointly interested in the accomplishment of these objects. Secondly, the debts due are to be paid by these plaintiffs ; and the *amount* and *proportion* cannot be established, unless both are parties. Thirdly, the plaintiffs would sue or be sued jointly, in ejectment. Clearly then, they may come together before a court of equity for the removal of a common obstacle, without being turned out of doors for multifariousness. *Coop. Eq. Pl.* 182. *Brinkerhoff* & al. v. *Brown* & al. 6 *Johns. Ch. Rep.* 139. 151. *Reid* & al. v. *Gifford* & al. *Hop. Ch. Rep.* 416. 419. *Watertown* & al. v. *Cowen* & al. 4 *Paige* 510. 515. *Mix* & al. v. *Hotchkiss* & al. 14 *Conn. Rep.* 42.

2. That the representatives of Mrs. *Whittlesey* were properly made parties ; because otherwise the plaintiffs could not obtain the legal title.

Hinman, J. The first claim made by the defendants, is, that the bill is multifarious, in this, that the plaintiffs have united in bringing it. In other words, the defendants claim, that tenants in common cannot join in a suit in chancery, the object of which is to perfect their title, and quiet them in their joint possession of the common estate.

It might seem a sufficient answer to so broad a proposition, that no authority has been or can be found to sustain it. It is, however, not only unsupported by authority, but it conflicts directly with the long established and well settled rule in relation to the proper parties to bills in chancery ;—" That all persons materially interested in the subject-matter ought to be made parties to the suit, either as plaintiffs or defendants, however numerous they may be, in order that complete justice may be done, and that multiplicity of suits may be avoided. *Story's Eq. Pl.* 77. *Coop. Eq. Pl.* 33. 2 *Sw. Dig.* 200.

But again, it is claimed, that the executors and heirs of *Electa Whittlesey* ought not to have been made parties ; and because they are, the bill is said to be multifarious.

*Hartford.*
*June, 1842.*

Cornwell
*v.*
Lee.

The general rule on this subject, adopted by this court, in *Mix* & al. v. *Hotchkiss* & al. 14 *Conn. Rep.* 42., that " where several plaintiffs, by one bill, demand several matters, perfectly distinct and unconnected, against one defendant ; or where one plaintiff demands several distinct and unconnected matters, against several defendants, the bill is multifarious," is subject to very many exceptions ; as where a general right is claimed, though the defendants have separate and distinct interests, the bill is not multifarious. So, there are numerous cases, where persons may be made parties, who have no material interest in the suit;—as a mortgagor in a suit brought to redeem a former mortgage, against the first mortgagee, and not asking a foreclosure, nor making any prayer, against the mortgagor. So, also, in a suit brought by the assignee of a bond against the obligor, the obligee in the bond may be joined, though he claims no interest. And Judge *Story*, in his commentaries on *Equity Pleadings*, after a copious and learned review of the whole doctrine of multifariousness, says : " The conclusion to which a close survey of all the authorities will conduct us, seems to be, that there is not any positive, inflexible rule, as to what, in the sense of courts of equity, constitutes multifariousness. These courts have always exercised a sound discretion, in determining whether the subject matters of the suit are properly joined or not ; and whether the parties, plaintiffs or defendants, are properly joined or not. And in new cases, courts will be governed by those analogies which seem best founded in general convenience, and will best promote the due administration of justice, without multiplying unnecessary litigation on the one hand, or drawing suitors into needless expenses on the other." *Story's Eq. Pl.* 413. 1 *Mylne & Craig* 621.

Tested by these principles, this case, in our opinion, is free from the objections claimed.

The objects of the plaintiff's bill are, to remove two incumbrances upon their common property, to prevent a suit against them as joint occupants, and to quiet them in their joint possession. The plaintiffs, therefore, are jointly interested in the attainment of all these objects; and being so, it is very proper for them to join in bringing a suit for the accomplishment of them.

Again, the subject-matter of the suit is the property,—the

land in question ;—and the object of the suit is, to perfect the plaintiff's title, and quiet them in their enjoyment of it. The defendants are all interested, and materially interested, not only in the subject matter, but also in the object of the suit.

*Hartford,*
*June, 1842.*

Cornwell
*v.*
Lee.

Why, then, may they not be joined ? We think they may be. Their interests are no more separate and distinct, than the interests of prior and subsequent mortgagees always are. *Mix* & al. v. *Hotchkiss* & al. 14 *Conn. Rep.* 32. 42. *Brinkerhoff* v. *Brown,* 6 *Johns. Ch. Rep.* 151. *Reid* & al. v. *Gifford* & al. *Hop.* 416. 419. *Watertown* & al. v. *Cowen* & al. 4 *Paige* 510. 515.

We therefore advise the superior court, that the demurrer be overruled.

In this opinion the other Judges concurred.

Demurrer overruled.