The facts in this case are as follows: Thomas Sardo, the complainant, went to his broker, Mr. Lederer, and told him he wanted to insure his money and jewelry. Lederer then took him to Mr. Newman, a soliciting agent of the Fidelity and Deposit Company of Maryland, the defendant. They told Newman that they wanted a policy of insurance on the money and jewelry of the complainant. Newman said he would communicate with his company in Newark and find out what could be done, because he had no authority himself to write a policy. Newman then sent a written application to the office of the insurance company in Newark. That application was not produced in evidence. Mr. Brush, who is now the general agent in charge of the Newark office, went down to Paterson to look through the store of Sardo. He entered the store and saw the jewelry in the place. Upon examination, Brush admitted that there were no securities in the store of Sardo, the complainant, and that all he had there was jewelry. He admitted that the complainant, Sardo, had nothing to insure except jewelry, so far as he observed. He then returned to Newark and telephoned to Newman that the company would issue a policy covering money and securities only, and a policy covering money and securities was afterwards sent to Newman for counter-signature and delivery to *Page 24 
the assured. Newman said that he glanced at the policy and saw that it covered money and securities only, but that he interpreted it in his own mind to also cover jewelry. He thereupon handed it to Sardo's broker, Mr. Lederer, who, in turn, delivered it to Sardo. Neither Sardo nor his broker read the policy. Prior to the expiration of that policy a robbery occurred and a large amount of jewelry was stolen from Sardo's place of business. About a month after the robbery the policy was renewed in the same form. Sardo says that he did not read the second policy, and that the first that he knew that he was not covered for money and jewelry was when the defendant filed an answer, some months later, in an action at law, commenced by Sardo against the insurance company for the payment of the policy, which set up as a defense that the policy did not cover money and jewelry, but that it covered money and securities only. Thereupon, the present bill was filed in this court for the reformation of the policy on the ground of mutual mistake, the bill averring that it was the intention of both complainant and defendant that a policy was to be issued insuring Sardo against loss of money and jewelry, but that through mistake the policy was issued to cover money and securities, instead of money and jewelry. The insurance company denies that there was any mistake, and asserts that it specifically refused to cover jewelry, and intended to issue the policy which was issued, namely, to cover money and securities, and that there was no mutual mistake.
The bill contains no allegation of fraud, nor is that issue raised by the pleadings and proofs.
The policy of insurance was issued by the defendant on June 13th, 1923, for one year, and was designated as "Messenger and Office Robbery Policy, No. M-6111250," insuring against loss of "money and securities." The premium, amounting to $40, was paid by the assured. The jewelry of which the store was robbed is alleged to be of the value of $9,000, which was $1,000 in excess of the insurance under the policy referred to. *Page 25 
The theory of mutual mistake upon which complainant appears to base his claim for relief is, that the complainant contracted with Mellor Newman for the issuance of a holdup policy on his jewelry shop, and that Newman was concededly the agent of the defendant, and that this is shown by letterheads and cards given by the defendant to him, Newman, in which he is termed their agent. Complainant further contends that it is proved by letters received by Mr. Newman in the course of his business, one of which accompanied the policy issued to complainant, and called for Mr. Newman's counter-signature, that Mr. Newman was clothed with apparent authority to act for the company; that as agent he contracted with the complainant, and that the defendant attempted to take the benefit of that contract by writing up the policy for complainant; hence, that the act of Mellor Newman was the act of the corporation, if done within his authority, or the apparent scope of his authority, and that it follows that there was a mutual mistake.
The ordinary layman is not a trained lawyer nor an insurance expert. That was decided in the case of Radawansky v. ScottishUnion Insurance Co., 126 Atl. Rep. 657.
The next proposition is, that the doctrine of caveat emptor
does not apply to insurance. That was decided by Vice-Chancellor Lane in the case of Giammares v. Allemenia Fire Insurance Co.,91 N.J. Eq. 114.
Now, a man is not debarred from relief merely because he does not read the policy, and in this case the evidence is that the complainant was an ignorant man, and that he relied upon the representations of his broker and the agent of the company that the policy which would be delivered would be that which he ordered. And it is admitted by the agent of the company that he understood the order, and that the policy ordered was a policy to protect the jewelry and not the securities. The evidence further shows that, in compliance with the complainant's order, the agent of the company communicated with the general agent of the defendant. In the absence of any proof to the contrary, the presumption is that the agent of the company in the performance of his *Page 26 
duty to his principal did communicate the kind of a policy that the complainant ordered. The evidence shows that shortly after the order was given the general agent of the company called upon the complainant and inspected the stock of merchandise of the complainant, and that at no time, either prior or subsequent to the delivery of the policy, did the general agent of the company, either by word or conduct, indicate that the policy to be delivered or actually delivered was different from the policy ordered.
In view of these facts the complainant had a right to expect that the defendant would issue to him a policy which he had ordered, and he had the further right to rely upon the fact that the policy which was delivered to him was, in fact, the policy which he had ordered.
It further appears that, notwithstanding complainant's claim, that he had been misled by the agent of the company, and that the policy issued was not the one he ordered, the company, nevertheless, retained the premium and has at no time made any offer to return the same. So, that, even assuming that the company was perfectly innocent in the matter, its retention of the premium under these circumstances, and with knowledge of these facts, operated as an estoppel, and as a ratification. The principal cannot retain the benefits of the agent's acts even though it was unauthorized, and at the same time disclaim liability.
The situation herein disclosed in some respects resembles the situation in the case of Commercial Assurance Co. v. NewJersey Rubber Co., 61 N.J. Eq. 446. In that case Vice-Chancellor Emery held that, in equity as well as at law, the retention of the pro rata proportion of the premium, as on a valid policy, is an affirmance of the validity of the policy. This case was one to reform a fire policy and to enjoin an action at law, and also to restrain an action at law on the policy. It was claimed by the insurer that the policy was void because of cancellation, but the court held that, notwithstanding such cancellation, the retention of the unearned premium by the company was an affirmance of the policy. *Page 27 
Applying the principle in that case to the instant case, the contention of the insurance company that there was no policy in force, for the reason that the minds of the parties did not meet, with knowledge of all the facts, estops them from asserting the defense of "nudum pactum."
It is well established that, where one of two innocent parties must suffer from the fraud of a third person, the loss ordinarily falls upon the one whose act enables such fraud to be committed.27 Corp. Jur. 10.
That the presumption is that the agent has communicated the facts of plaintiff's order to the principal is sustained byStory on Agency.
Accepting and retaining the benefit obtained by a principal under an unauthorized contract of the agent, with full knowledge, may be held to be a ratification. Dunston Lithograph Co. v.Borgo, 87 Atl. Rep. 334.
There is no doubt in my mind that Sardo, Lederer and Newman all believed that the policy of insurance was to cover the jewelry in the store. They all agreed on that. Their testimony was very positive and very convincing to the mind of the court. The story told by Mr. Brush seems to be rather incredible, that the company was willing to insure money and securities to the amount of $8,000, without actually knowing what money and securities he had. Certainly, money and securities are much more easily handled than jewelry. The only serious question remaining in my mind is, whether Sardo was bound to discover from a reading of the policy that it did not cover his jewelry, and I am of the opinion that the fact that he did not discover, by the reading of the policy, that it did not so cover the jewelry, is not fatal to his case.
The prayer of the bill will therefore be granted, and the policy will be reformed in accordance with the prayer. I will so advise. *Page 28