Helen R. Spencer *vs.* Charles B. Mack.

First Judicial District, Hartford, May Term, 1930.

Wheeler, C. J., Maltbie, Haines, Hinman and Banks, Js.

Argued May 6th—decided July 31st, 1930.

*George C. Morgan,* with whom was *Abel P. Tanner,* for the appellant (defendant).

*Rollin U. Tyler,* with whom, on the brief, was *L. Horatio Biglow, Jr.,* for the appellee (plaintiff).

HAINES, J. On the 22d day of September, 1923, the defendant received a warranty deed from Bessie R. Rutzler, of certain land in Old Saybrook with dwelling-house and other buildings thereon, described as follows: "Commencing at a point which is twenty-five feet and six inches (25′6″) northerly from the dwelling-house and on the easterly side of Ingham Hill Road and running southeasterly two hundred and ninety-seven (297′) feet, more or less, to a ditch, the point being marked by a stake; thence southwesterly three hundred and forty-eight (348′) feet, more or less, along said ditch to a stake; thence westerly forty-eight (48′) feet, more or less, to a point on the Ingham Hill Road which is one hundred and forty-six and a half feet (146½′) northerly from the center of the Boston Post Road; thence northerly from said point, three hundred and twelve (312′) feet, more or less, to point and place of beginning. Bounded northerly, easterly and southerly by land now or formerly of Frederick C. Spencer; and westerly by said Ingham Hill Road."

The plaintiff then owned and still owns the land which abuts the above described property on the south. She is the widow and devisee of Frederick C. Spencer who formerly owned both tracts as one. The westerly boundary of the original tract is what is known as the Ingham Hill Road, which runs approximately north and south, and the southern boundary is the Boston Post Road so-called, which runs approximately east and west. The north portion of that tract was bounded, in part, on the east by a "ditch," and the remainder or south portion of the tract is bounded on the east by Oyster River. Part of the north end of the tract was sold and deeded by Frederick C. Spencer December 20th,

1920, to Clarence Rutzler, the land so conveyed being described as set forth in the defendant's deed above recited. Clarence Rutzler held the property so conveyed until October 12th, 1922, and then by the same description deeded the property to Bessie Rutzler, who in turn held it until September 22d, 1923, and then sold and deeded it to the defendant by the same description, and the defendant still holds it.

The defendant has for some years been the proprietor of a market for the sale of fish and other sea foods, and desired to obtain land which was bounded upon Oyster River in which the tide ebbs and flows, in order that he might keep his merchandise fresh and to permit the waste of his market to be carried away by the tide. With this purpose in view, he bought the land from Bessie Rutzler as above stated. He then claimed and still does, that the south portion of the land acquired under his deed, is bounded on the east by Oyster River, and in March, 1927, he erected a building for the purpose of his business upon the extreme southern portion of the land so claimed, and on the bank of Oyster River, and has continued to use it to the present time. The plaintiff protested to the defendant that the erection of his building at the point referred to, would be a trespass upon her land, but, so far as appears, took no legal steps to prevent its erection or procure its removal. On April 24th, 1924, she brought an action against the defendant, setting up a description of the land she claimed to own north of the Boston Post Road, and alleging that the defendant claimed an interest in the land or part of it adverse to her title. Her prayer for relief was "that the court hear the several claims and determine the rights of the parties, whether derived from deeds, wills or other instruments or sources of title, and determine the construction of the same, and render judgment de-

termining the questions and disputes, and quieting and settling the title to such premises." The file in that case was used in the trial of the present case and is before us upon this appeal. It is clear from the record that the decisive question in that case and in the present action as well, was the exact location of the northern boundary line of the plaintiff's land, which would also be the southern boundary of the defendant's land. If the plaintiff is right in fixing that line where she does, then the defendant's building is on her land, otherwise it is not. In answering her complaint in the first action, the defendant set up his claim to the location of his southern boundary in the language of his title deed, i.e. from a stake "thence westerly forty eight (48′) feet, more or less, to a point on the Ingham Hill Road which is one hundred and forty-six and one half (146½′) feet northerly from the center of the Boston Post Road." In her reply, the plaintiff alleged that instead of the west end of this boundary line on the Ingham Hill Road being one hundred and forty-six and one half feet north of the center of the Boston Post Road, it was in fact two hundred and forty-three feet, more or less, and further alleged that the description of this line in the defendant's deed "was, by mistake and clerical error, and without the knowledge of either party, inserted in the deed as 146½ feet, when in fact the true distance was approximately 100 feet greater." Issues were joined on these allegations of the parties, and the case was fully heard by the court (*Jennings, J.*). In deciding the case the court said that in the original deed from F. C. Spencer to Clarence Rutzler, "the grantee got more land than the grantor intended," but that "the description in this deed . . . identifies the property conveyed with certainty," evidently referring to the facts that the line runs easterly from Ingham Hill Road and that "146½" feet is the only

point in the disputed boundary line which the deed fixes with absolute precision, the others being stated as "more or less." The court further said: "Clarence Rutzler, Bessie Rutzler and Charles B. Mack all understood the deed as written and not in accordance with the unexpressed intention of F. C. Spencer. In fact the only reason Mack bought the property was to get possession of the small piece of land now in dispute." With this explanation the court entered a judgment finding all the issues for the defendant Mack. From this judgment, rendered December 7th, 1926, no appeal was ever taken. The foregoing analysis of these proceedings makes it clear that the location of this boundary line between the parties was adjudicated and determined. It was the line described in the deed, and claimed by the defendant, viz: from a fixed point on the Ingham Hill Road one hundred and forty-six and one half feet north of the center of the Boston Post Road, thence easterly forty-eight feet, more or less. This was what the defendant sought to buy, and what both Clarence and Bessie Rutzler sought to convey. There is here a sufficiently complete and definite line established between the parties, and it is unimportant whether there is now, an unidentified stake at the east terminus. It is entirely clear that forty-eight feet, measured straight east from this point on the Ingham Hill Road, carries the line into Oyster River as the defendant claims. This judgment was unattacked until April 11th, 1927, when the plaintiff brought the present action in four counts, alleging unlawful entry and occupation, deprivation of rents and profits, that the boundary line had "become uncertain," and that the defendant claimed an adverse interest, and asking possession and an injunction, the establishment of the boundary line and a quieting of the title. About two and a half years afterward, a substitute complaint was filed, mak-

ing substantially the same claims in different language, and, among other grounds of relief, asking that the court "so amplify, clarify and correct" the former judgment, "as to determine the boundaries between the properties and to quiet title." The fifth and controlling prayer for relief, all others being incidental thereto and dependent thereon, reads as follows: "That the court hear the several claims and determine the rights of the parties whether derived from deeds, leases or other instruments or sources of title, and determine the construction of the same and render judgment, determining the question of trespass and quieting and settling the title to said premises as provided by the statute for an action to settle title to land." A comparison of this prayer with that in the first case shows incontrovertibly that the relief sought is identical with that sought in the first case, and, as we have indicated, the vital issue in both cases was the location of the dividing line between the parties. Until the former judgment in favor of the defendant is reversed therefore, the plaintiff is not in a position to obtain the relief sought in the present action.

The plaintiff insists that the claim of the defendant, if established by the judgment, was such that the true line remains uncertain. It is true that where a grantor gives such boundaries as a "stake" or a "ditch" and states distances as "more or less," confusion and uncertainty often result. The court in the first case recognized this and held correctly that where boundaries are ambiguous, the grantee may adopt that boundary most favorable to him. *Merwin* v. *Backer,* 80 Conn. 338, 344, 68 Atl. 373. The court was justified in assuming that the line ran substantially straight easterly from the point indicated on the Ingham Hill Road. This brings the eastern end of the line into Oyster River. It leaves no proper occasion for doubt in the minds of the

parties as to where the line was fixed. If we turn to
the record in the present case we find the defendant in
his rejoinder insists upon this line as described in his
deed, but refers to the eastern end of the line as a
"stake by the ditch," thus repeating the language of
the deed. We cannot draw inferences as to what was
intended by the expression, nor is it of controlling im-
portance here. It is clear that he placed the line south
of his present building and ran it from the point on the
Ingham Hill Road easterly in a straight line into
Oyster River. The map seems to confirm this. Under
these circumstances we cannot hold that the judgment
in the first case becomes, as the plaintiff in effect con-
tends, void and of no effect. If the plaintiff was dis-
satisfied with the judgment she should have appealed
or taken other action. On the contrary, it appears she
acquiesced in it at least from December to April, and
then brought the present action. While the uncer-
tainty as to the location of the stake may have been re-
solved by the adoption of a line favorable to the de-
fendant, the law gives a grantee that right where the
grantor gives a deed containing such uncertain terms as
the one in question. While the former judgment there-
fore would have been much more satisfactory to all
parties if it had contained a detailed description of this
line instead of adopting the language of the defend-
ant's claim, yet it is sufficiently definite and certain to
stand. It certainly makes the conclusion of the court
as to the location of the line, unquestionable. The
main contention of the defendant in the present case
has been that the former judgment was *res adjudicata,*
and the overruling of that claim is one of the grounds
of appeal.

"It is an established rule in the administration of
justice, that all controversies between parties, once liti-
gated and fully and impartially determined, shall

cease; and to that end, no fact involved in such litigated controversy, shown by the record to have been material to its determination, and to have been put in issue and decided, whether the proceeding was at law or in equity, shall again be litigated between the same parties." *Munson* v. *Munson,* 30 Conn. 425, 433; *Supples* v. *Cannon,* 44 Conn. 424, 428; *Sargent & Co.* v. *New Haven Steamboat Co.,* 65 Conn. 116, 126, 31 Atl. 543; *Wildman* v. *Wildman,* 70 Conn. 700, 706, 41 Atl. 1; *Storrs* v. *Robinson,* 77 Conn. 207, 209, 58 Atl. 746. "Where there is an identity of causes of action, the decision of one action by a court of competent jurisdiction concludes the parties and their privies upon every fact which was or should have been litigated therein. *Bell* v. *Raymond,* 18 Conn. 91. Even if the causes are not identical, but do raise an important identical issue, then the parties and their privies are concluded by the decision of that issue in a court of competent jurisdiction." *Ruocco* v. *Logiocco,* 104 Conn. 585, 593, 131 Atl. 73; *Thomas' Appeal,* 85 Conn. 50, 53, 81 Atl. 972; *Scott* v. *Scott,* 83 Conn. 634, 638, 78 Atl. 314; *Pavelka* v. *St. Albert Soc.,* 82 Conn. 146, 147, 72 Atl. 725; *Wildman* v. *Wildman,* 70 Conn. 700, 41 Atl. 1; *Huntley* v. *Holt,* 59 Conn. 102, 107, 22 Atl. 34. This question being thus determined, the plaintiff is not entitled to judgment in this action.

There is error, the judgment is set aside, and the Superior Court directed to enter judgment for the defendant for his costs.

In this opinion the other judges concurred.