LAKE GARDA IMPROVEMENT ASSOCIATION *v.* HARRY J. BATTISTONI ET AL.

Alcorn, C. J., House, Thim, Ryan and Loiselle, Js.

Argued February 4—decided March 17, 1971

*John D. Bagdasarian,* for the appellants (defendants).

*Paul W. Orth,* with whom was *James I. Lotstein,* for the appellee (plaintiff).

THIM, J.   The plaintiff association is a specially chartered corporation by virtue of 24 Special Acts 1943 No. 255, and is composed of owners of real estate in the proximity of Lake Garda, located in the towns of Farmington and Burlington, as described on certain maps filed in the town clerk's office of each of those towns.   The association claims title to a disputed beach area, either by virtue of a deed from Ron-Day, Inc., a Connecticut corporation, or by adverse possession.   The plaintiff Ralph Gezelman is the owner of land within the area mentioned. His claims are made in behalf of himself and all other property owners at Lake Garda similarly situated, and are to be asserted only if the plaintiff association is determined not to be the fee owner of the disputed property.   The defendant Harry J. Battistoni is a former owner and developer of much of the area surrounding Lake Garda.   The defendant Lake Garda Company, Inc., is controlled by the defendant Battistoni, who now is, and in the past has been, its president.   The Lake Garda Company, Inc., is a former owner of the area in dispute.   The defendant Lake Garda Water Company, Inc., is another corporation which the defendant Battistoni

controls and serves as president. The Lake Garda Water Company, Inc., presently claims the ownership of the disputed property under a chain of title commencing with the Lake Garda Company, Inc.; passing, by warranty deed, to Ron-Day, Inc., in 1936; then, by quitclaim deed, to Battistoni in October, 1945; next, again by quitclaim deed, to the Lake Garda Company, Inc., in June, 1946; and finally, by quitclaim deed, to the Lake Garda Water Company, Inc., in March, 1962.

The issue of the ownership of the disputed area was resolved in favor of the plaintiff Lake Garda Improvement Association by the trial court. Damages were awarded in the amount of $75 in favor of the plaintiff Lake Garda Improvement Association for a trespass on the property of the plaintiff association, which the trial court found to have been committed by Battistoni and employees of the Lake Garda Company, Inc. The trial court made permanent a temporary injunction restraining the defendant Battistoni and the Lake Garda Company, Inc., from interfering with the plaintiff association's control, ownership and use of the disputed property. Judgment was rendered, and the defendants have appealed therefrom, assigning as error: (1) the court's refusal to find certain facts claimed to be material and admitted or undisputed; (2) the court's finding of certain facts without an evidentiary basis therefor; (3) the court's finding that the use of the beach area by the plaintiff association was with the consent of the defendants; (4) certain conclusions reached by the court, claimed not to be supported by the facts found; (5) the overruling of the defendants' "claims of law" stated in paragraphs 52–55 of the finding; and (6) the rendering of judgment in favor of the plaintiff association with regard to the

title and ownership of the beach area in dispute, since such a conclusion was not supported by the facts and conclusions which were, or should have been, found by the court.

Three of the errors assigned, those designated (1), (2) and (3) above, have not been pursued in the brief of the defendants and they provided no appendix in support of their requested corrections of the finding. They will, therefore, be treated as abandoned. Of the remaining three errors assigned, number (5) refers to "the claims of law stated in paragraphs 52 to 55." These paragraphs concern rulings made at the trial, and are not claims of law. The claims of law of the defendants are found in paragraphs 56–65 of the finding. We assume that the defendants intended to refer to the claims of law and will thus treat their fifth assignment as referring to paragraphs 56–65.

Five deeds are involved in this case. The first was a warranty deed from the Lake Garda Company, Inc., to Ron-Day, Inc., on May 26, 1936. That deed conveyed the property presently in dispute, as well as a substantial amount of other realty. The validity and content of that conveyance is in no way attacked by any party to this action. The second conveyance, by a quitclaim deed dated May 29, 1943, was from Ron-Day, Inc., to the plaintiff Lake Garda Improvement Association. This was a conveyance of "certain lands laid out as and comprising roadways within a certain development known as Lake Garda . . . which said roadways are specifically delineated and described on three (3) certain maps on file [with the towns of Burlington and Farmington]." This is the deed which initiated the controversy which this action seeks to terminate. The defendants claim that this deed passed title only

to the roads, and did not include a small beach area known as, and hereinafter referred to as, Children's Beach. The plaintiff association claims that the beach was included in the roadway of Beach Road, and thus title to that beach passed to it at that time. The remaining three deeds have already been mentioned. On October 23, 1945, Ron-Day, Inc., quitclaimed all of its "right, title, interest, claim and demand" to its property within the Lake Garda development to the defendant Battistoni. On June 5, 1946, the defendant Battistoni quitclaimed all of the property which he had received from Ron-Day, Inc., in the October 23, 1945, deed, to the Lake Garda Company, Inc. Finally, the Lake Garda Company, Inc., on March 23, 1962, quitclaimed only the area embraced within Children's Beach to the Lake Garda Water Company, Inc. Further facts will be recited as they become necessary.

The defendants claim, initially, that the plaintiff Lake Garda Improvement Association has not demonstrated sufficient interest in the property to maintain this action. It is correctly alleged that a plaintiff must show possession in himself or his predecessors in title by satisfactory evidence or acts of ownership such as occupancy, use and control. *Mentz* v. *Greenwich,* 118 Conn. 137, 143, 171 A. 10; *Foote* v. *Brown,* 81 Conn. 218, 225, 70 A. 699. The plaintiff association claims title under the 1943 deed from Ron-Day, Inc. Ron-Day, Inc., held title under a warranty deed from the defendant Lake Garda Company, Inc. It is clear that use, occupancy and control need not refer to every inch of a tract of land. That the Lake Garda Company, Inc., controlled the disputed area is unquestioned. The defendants cannot claim otherwise. Likewise, the use, occupancy and control of Ron-Day, Inc., is not chal-

lenged. Since the defendants claim title from the same source, they can hardly make the claim that their source had no title. Finally, as to the plaintiff association, it has alleged and demonstrated that it has used, occupied and controlled Children's Beach since May 29, 1943, the date of the deed under which it claims title. We believe that the allegations and proof, as demonstrated by the finding, are sufficient to indicate that the plaintiff association has the necessary interest to maintain the instant action.

All of the parties appear to claim that, apart from the deeds, they obtained valid title through adverse possession. For adverse possession to be acquired, a claimant must demonstrate that he, or those through whom he claims title, or a combination thereof, have maintained exclusive and uninterrupted possession for fifteen years. Each adverse possessor in the continuous chain must not have shared control with others if this condition is to be met. See *Marquis* v. *Drost,* 155 Conn. 327, 331, 332, 231 A.2d 527; *Short Beach Cottage Improvement Assn.* v. *Stratford,* 154 Conn. 194, 199, 224 A.2d 532; *Smith* v. *Chapin,* 31 Conn. 530, 531. Clearly, there are sufficient facts found in this case to demonstrate that none of the parties exercised exclusive possession during the years under consideration. Rather, the finding indicates that both the plaintiff association and the defendants exercised control over the beach and made use of it. The trial court properly concluded that none of the parties had acquired title by adverse possession. The rights of the parties must, therefore, be determined solely with reference to the contested portion of the 1943 deed.

The basic issue is whether the quitclaim deed of May 29, 1943, to the plaintiff association passed title

to the beach area. If the deed has been properly construed as including the beach area, none of the defendants has title to that property. If the trial court erred, however, that is, if the deed, in actuality, could not be properly construed to show an intent to include the beach, then the plaintiff association would have no title to that property. The trial court concluded that the deed did include the beach area, and thus found the title to be in the plaintiff association. On this point we thus must determine only if that conclusion is reasonably supported by the facts properly found and the law properly applied.

The May, 1943, deed, hereinafter referred to as the deed, has already been quoted in part. One additional portion of the deed is essential to our consideration. Following the previously quoted portion, the deed continued: "Meaning hereby to convey only such land as contained within the limits of the following roadways: . . . and Beach Road, as described on the aforesaid map of Section 'A.'" From this language the trial court concluded that the map of section A was incorporated by reference into the deed. To that conclusion the defendants have assigned error. We believe that the contention of the defendants is clearly without merit. Without a doubt the deed does incorporate the map of section A. That map is specifically designated in the deed, and it was, as stated, on file with the towns of Farmington and Burlington.

Since the deed specifies that the map describes the roadways intended, that map is controlling as to the refinement of the generally descriptive word "roadway". See 23 Am. Jur. 2d 276, Deeds, § 235. The problem which arises, and which has thus necessitated this litigation, is that the map, while clear and

specific in every other detail, neither shows the width of Beach Road nor clearly delineates the eastern boundary of that road. The western boundary is included, but the eastern boundary appears to follow the shoreline of Lake Garda. Children's Beach, which apparently existed at the time of the deed, does not appear on the map at all. That area, rather, is included in the broad area designated as Beach Road. As a result of the condition of the map as to the boundaries of Beach Road, the trial court found the map ambiguous. This conclusion has been assigned as error by the plaintiff association. Whether we agree or disagree with that conclusion, it was reasonable. "Ambiguous" can be defined as unclear or uncertain. Certainly, under the circumstances, it can be said that the position of the roadway on the map is uncertain. The trial court, therefore, did not err in concluding that the map is ambiguous.

Where there is an ambiguity in the description of a boundary line in a deed, the question of what the parties intended that line to be is one of fact for the trial court. *Christen* v. *Ruppe,* 131 Conn. 149, 152, 38 A.2d 439. In the construction of an ambiguous instrument of conveyance, the decisive question of fact is the intent of the parties to the instrument. *Staff* v. *Hawkins,* 135 Conn. 316, 319, 64 A.2d 176. With the map determined to be ambiguous, and since the deed specifically conveyed each road as designated on the map, it became necessary for the court to determine the intent of the parties as expressed in the deed on the question whether Children's Beach was to be included in that roadway.

In construing a deed, a court must consider the language and terms of the instrument as a whole; *Faiola* v. *Faiola,* 156 Conn. 12, 17, 238 A.2d 405,

*Dennen* v. *Searle,* 149 Conn. 126, 131, 176 A.2d 561, *B. T. Harris Corporation* v. *Bulova,* 135 Conn. 356, 360, 64 A.2d 542; the words are to be given their ordinary popular meaning, unless their context, or the circumstances, show that a special meaning was intended. *Katsoff* v. *Lucertini,* 141 Conn. 74, 77, 103 A.2d 812. The inquiry is into the intent as expressed in the instrument, and need not be what the parties actually intended. It is the meaning of what is said that controls, not what is meant to be said. *Faiola* v. *Faiola,* supra; *Katsoff* v. *Lucertini,* supra. The deed, as a whole, conveys what it terms "roadways". This is a term which easily may be confused with "road", or "traveled surface", or the like. A "roadway" can be a strip of land through which a road is constructed. A "road", on the other hand, usually refers to that portion of a roadway over which vehicular traffic passes. See Webster, Third New International Dictionary. Thus, while the terms "roadway" and "road" may, at times, be synonyms they need not be so used. Of the two, "roadway" seems to be generally employed as the broader term. Thus, it is clear that the deed could reasonably be construed to have intended to grant more than the portions of the roadways then in use as passageways. The intent could reasonably be found to include a certain amount of land surrounding the roads. Since the trial court apparently concluded that the broad meaning of "roadway" was intended, the evidence concerning the existence of Beach Road from 1936 to the present, and the portion in use, is of little value in determining the intent of the parties. While the "road" and the "roadway" need not have been synonymous, the existence of the road at least demonstrates the minimum amount of

land which could have been contemplated as "the roadway". "To lay out a highway is to locate it and define its limits." *Crawford* v. *Bridgeport,* 92 Conn. 431, 436, 103 A. 125. There appears to be no reason why such a layout must be on the ground, for this can be accomplished on a map as well, as long as the location is specific. A road, in the narrow sense, once physically laid out on the ground, is visually apparent. Thus, Beach Road is physically laid out and visible. A roadway, in the broad sense, however, is not obvious, as can be seen by looking at any roads surrounded by open fields, beaches, or the like. Thus, the application of the language used in the deed, construed as a whole, supports the reasonableness of the conclusion that the entire area was included in the conveyance.

The court may also consider the surrounding circumstances at the time of the conveyance, and the situation of the parties at that time. *Faiola* v. *Faiola,* 156 Conn. 12, 17, 238 A.2d 405; *Dennen* v. *Searle,* 149 Conn. 126, 131, 176 A.2d 561; *Henriques* v. *Rockefeller,* 148 Conn. 654, 658, 173 A.2d 596. The pertinent surrounding circumstances in this case are two in number. First, the charter of the plaintiff association permitted it, among other things, to control, own and care for roadways and beaches. The charter was adopted, by virtue of 1943 Special Acts No. 255, only nineteen days before the deed was executed. It is, therefore, reasonable to conclude that the deed, which mentioned the special act, contemplated the granting of property of the type which the charter permitted the plaintiff association to control. The inclusion of Children's Beach would be such a grant. Second, by observing Beach Road on the 1936 map of section A, it is clear that it is unlike any other road in the subdivision; its width

varies greatly, and it is not a substantially straight road. Further, by viewing the map of the defendants of the same area, which includes the Children's Beach area, and thus shows the actual road, it can be observed that Beach Road forms approximately a double right angle bend at Children's Beach. Thus, one driving south on that road would have to make a sharp right turn, followed immediately by a sharp left. With such a condition in existence it seems at least reasonable to consider that the parties to the deed may have contemplated a future straightening of Beach Road. Thus, in that particular area, a somewhat larger roadway grant than in others might well have been necessary. The fact that all of the other roads in the subdivision appear to be relatively straight tends to support this possibility. In all, the surrounding circumstances support the likelihood that the beach area was intended to be conveyed to the plaintiff association, as a portion of the Beach Road roadway.

Ambiguous language in a grant is ordinarily construed against the grantor, and in favor of the grantee. *Faiola* v. *Faiola,* supra, 18. Further, "where boundaries are ambiguous, the grantee may adopt that boundary most favorable to him". *Spencer* v. *Mack,* 112 Conn. 17, 22, 151 A. 309. There is a presumption that a party who grants land does not intend to retain a narrow strip of land between that sold and the boundary line of his property, especially where the grantee would thereby be cut off from valuable privileges and where the strip is so narrow as to be of no practical use to the grantor. Absent an express provision which excludes such a strip, its inclusion will be presumed. 23 Am. Jur. 2d 281, Deeds, § 241. The court found that the map was ambiguous, and that the deed relied upon the

map to define the boundaries of the property granted. In such a situation construction must favor the grantee. Within the maximum limits of the ambiguous grant the grantee may choose his own boundary. It is clear that the plaintiff association has adopted the shore of Lake Garda, and has thus included Children's Beach. As this is within the limits of the map, we cannot say that this adoption was beyond the intent of the deed. Further, in the instant deed there is no express statement concerning the retention of the Children's Beach area, a relatively narrow strip of land. The retention of that area by the grantor would exclude the plaintiff association from the valuable privileges of the use of the beach. The defendants contend that the strip which would remain would not be so narrow as to be of no practical use to the grantor or his assigns. That contention, however, must rely upon the further contention of the defendants that the width of the roadway was but fifty feet. The assignment of a fifty-foot width is almost totally arbitrary. Its sole basis is the placement of the lettering on the official map of section A. If, to the contrary, the roadway includes some property to the east of Beach Road, then the remaining strip between it and the lake would be somewhat narrower. If sufficient land were included in the roadway to allow removal of the previously noted reverse curve, the remaining portion could be narrow indeed. Thus, without a distinct eastern boundary for the roadway, it is certainly reasonable to conclude that the strip which remained would be of little or no use if it were retained.

To summarize the issue of title, the trial court's conclusion that the "intention of Ron-Day, Incorporated was to convey the entire area depicted on

the map as Beach Road to the plaintiff corporation" was clearly within reason, within the facts as found, and in compliance with the appropriate rules of law. The deed of May 29, 1943, therefore, did convey to the plaintiff the area known as Children's Beach.

With valid legal title in the plaintiff association as of 1943, the resolution of the present interests of the defendants becomes elementary. The 1943 deed reserved to Ron-Day, Inc., a right to free passage over all of the roadways described in the deed. The quitclaim deed, therefore, of October 23, 1945, from Ron-Day, Inc., to Battistoni, conveyed, as related to Beach Road, only the right which was retained in the 1943 deed, the right of free passage. Likewise, Battistoni's quitclaim deed to the Lake Garda Company, Inc., on June 5, 1946, conveyed only that same right. The March 23, 1962, quitclaim deed from the Lake Garda Company, Inc., to the Lake Garda Water Company, Inc., however, attempted to convey the right and title to the Children's Beach area, exclusive of Beach Road itself. The Lake Garda Company, Inc., had only a "right of passway freely. . . over each and every. . . roadway". That right would attach only to the existing road. "When a grant of a right of way does not fix the exact route it is to follow, its location is established . . . by the practical location and use by the grantee, acquiesced in by the grantor at the time." *Gaffney* v. *Pesce,* 144 Conn. 17, 19, 126 A.2d 926. The right to Beach Road itself was not conveyed to the Lake Garda Water Company, Inc., and thus the deed to the beach conveyed nothing.

We turn now to the issue of trespass. A trespass on real estate is the doing of a direct injury to property by force. *Whitman Hotel Corporation* v. *Elliot & Watrous Engineering Co.,* 137 Conn. 562,

570, 79 A.2d 591. The plaintiff must prove possession, title and the absence of actual exclusive possession in another. *More* v. *Urbano,* 151 Conn. 381, 383, 198 A.2d 211. The status of the plaintiff association has been resolved in such a manner that an action in trespass does lie. The trial court found that the defendant Battistoni and employees of the defendant Lake Garda Company, Inc., entered on land just east of Beach Road, removed the fencing of the plaintiff association, and placed a number of large boulders parallel to the fence line, and within the traveled portion of the road. The plaintiff association requested that they be removed, but the defendants did not comply with the request. The plaintiff association then had the boulders buried at a cost of $75. It seems obvious that the elements of the trespass had been met and the trial court was correct in so finding.

Concerning damages for the trespass, we think that the amount found by the trial court was reasonable, and is supported by the facts found. The award was precisely the cost of burying the boulders placed on the road by the defendants.

The defendants also contend that the trial court did not indicate which defendants were liable in trespass. The finding specifically states that the trespass was committed by the defendant Battistoni and employees of the Lake Garda Company, Inc. Applying the principle of respondeat superior, those liable in trespass are Battistoni and the Lake Garda Company, Inc. In both the memorandum and the judgment, the trial court, in finding a trespass, referred to the fifth count of the plaintiff's complaint. The fifth count of the complaint is directed specifically to the defendants Battistoni and the Lake Garda Company, Inc. Perhaps the trial court should

have been more specific. Any possible error, however, is certainly harmless, as the award was sufficiently specific to apprise the defendants as to which of them were liable for the damages in trespass.

The injunction which the trial court made permanent enjoins the defendant Battistoni and the Lake Garda Company, Inc., from entering on Children's Beach and Beach Road "for the purpose of placing any obstacle or object thereon or of doing any act of construction or obstruction to said Beach or any of its facilities or of interfering with parking thereon or the use thereof by the plaintiff's members". This injunction does not prevent the defendants from using Beach Road. It merely prevents any interference with the plaintiff association's control and use of those areas. The defendants' past actions support the necessity of such an injunction, and its terms are clearly in accord with the plaintiff's title and possession, and with the defendant Lake Garda Company's retained rights.

The final contention raised by the defendants is that the court erred in not adjudicating the rights of the property owners who were before it as a result of the class action instituted by the plaintiff Gezelman. Concurrently, the defendants seem to argue that the class action cannot be pursued since all the necessary parties thereto were not joined. We need not determine the issue as to parties since, as we have noted, the plaintiff Gezelman's claims were in the alternative. He requested an adjudication only if the plaintiff association were found not to be the owner of Children's Beach. Since the plaintiff association was found to be the owner of that beach, no adjudication of the rights of Gezelman and other property owners similarly situated was necessary.

Briefly summarizing our conclusions: the plaintiff did demonstrate sufficient interest for this action to lie; title and possession of the contested property, the Children's Beach area, was reasonably found to be in the plaintiff association; the defendants Battistoni and the Lake Garda Water Company, Inc., have no right, title or interest in that area; the Lake Garda Company, Inc., has a right of passage over the beach area roadway; the finding of a trespass on the part of the defendants Battistoni and the Lake Garda Company, Inc., was reasonable; damages assessed on the trespass were against the defendants Battistoni and the Lake Garda Company, Inc., and were reasonable, proper and sufficiently specific as to which were the liable parties; the permanent injunction was appropriately issued and not overly restrictive; and all of the issues raised in the complaint were fully adjudicated.

There is no error.

In this opinion the other judges concurred.