[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Bertram Robinson together with a partner, Robert Nuger, acquired title to several contiguous Parcels of land covering approximately 60 acres for the purpose of creating an office park to be known as Bright Meadow Office Park. These Parcels included a 50 foot strip acquired from the Hartford Electric Light Company in order to provide access to the interior of the premises (Exhibit M1). In acquiring the property the plaintiff and his partner mortgaged the property to the Connecticut Bank and Trust Company by means of several separate mortgages. When the plaintiff and his partner sought the approval of the Town of Enfield for this project the Town required as a condition of site plan approval that the access road to the interior of the premises be 60 feet, not 50 feet, wide as they had anticipated. On June 8, 1973 the plaintiff and his partner acquired an additional 10 feet of land plus 10 feet of slope rights from Hartford Electric Light Company. Thus the plaintiff acquired an undivided one-half interest in a strip of land 10 feet wide adjacent to and on the east side of the 50 foot strip of land originally acquired for access to the interior of the premises. (Exhibit M-2).
Since the partner, Nuger, is not a party to this action the court will make no further reference to him unless necessary for clarity and refer only to the plaintiff as if he had acted independently.
The 10 foot strip will be referred to hereinafter as the disputed land and the Hartford Electric Light Company will be referred to as HELCO. CT Page 7800
In the deed to the disputed land, HELCO reserved the right "to enter upon and travel . . . over and across said Parcel" and to place electric wires over the disputed property. The deed also contains a restriction that no structures may be placed on the disputed land and that it also may only be used for highway purposes in a manner approved by (HELCO) as a means of ingress and egress to and from other land of the plaintiff and his partner. Plaintiff and his partner paid HELCO $2,500.00 for the disputed land.
Shortly after the acquisition of the 10 foot strip the plaintiff arranged for the lease of a portion of the contiguous land to Hospitality Motor Inns, Incorporated. In conjunction with this lease, plaintiff had a map prepared and filed with the Town (Exhibit M3) entitled "Property of Robert Nuger and Bertram Robinson, Enfield, Connecticut dated 6/28/73." This map depicts the access to the interior property as a strip of land running from state street to the end of the 10 acre parcel leased to Hospitality Motor Inns which is 60.34 feet wide. Said map was revised on July 17, 1973 to show individual Parcels; was revised again on August 7, 1973 identifying Parcels C, D and E and was again revised on August 13, 1973 to show a sign right of way. The Parcel leased to Hositality [Hospitality] Motor Inns is designated as Parcel C. The access area contiguous to Parcel C contains complete dimensions. The access area which adjoins the HELCO property bears the label Robert Nuger and Bertram Robinson amd [and] is designated Parcel E. It shows a width of 60.34 feet but no lengthwise dimensions or any dimension at state street where it widens out. Robinson identified the disputed property as being part of the access road now labeled "Bright Meadow Boulevard" on a map filed with the Town entitled "Preliminary Plan, Owner and Developer, Robert Nuger and Bertram Robinson, Enfield, Connecticut" dated December 12, 1973 (Defendant's Exhibit 3). This map was prepared at the request of Robinson and filed with the Town and shows the disputed land as being within and a part of Bright Meadow Boulevard. It shows this road as being 60 feet wide.
The plaintiff built and paved Bright Meadow Boulevard to a point shortly past the property leased to Hospitality Motor Inns, a distance of slightly more than 1,000 feet. The road built and paved by the plaintiff contains an amesite center island and is curved. The portion located to the west of the island provides access into the off ice park. The portion of the CT Page 7801 road located easterly of the center island provides egress out to Route 5. The disputed land is paved right into the road and forms an integral part of the paved surface. Said disputed strip is so integrated into Bright Meadow Boulevard that if closed, at its widest point it would obstruct the entire outbound lane of Bright Meadow Boulevard, protrude over the center median and extend into the inbound lane located easterly of the center median. (Exhibit M4.) Bright Meadow Boulevard was used for access to the Harley Hotel (Hospitality Motor Inns) and the land beyond. The condition of Bright Meadow Boulevard including the disputed land has not changed since plaintiff constructed it.
Upon completion of the office park project the plaintiff intended to dedicate the roadway to the Town of Enfield.
The plaintiff had given several mortgages on different parcels to the Connecticut Bank and Trust Company as security for the various loans made in connection with the project. However, he never did place a mortgage on the 10 foot strip. It was acquired by him subsequent to most of the original mortgage lending.
At some point after the paving of Bright Meadow Boulevard the plaintiff's project ran into financial difficulties and Connecticut Bank and Trust Company commenced four separate foreclosure actions against plaintiff. Plaintiff retained counsel and resisted these foreclosures in court. Eventually plaintiff and CBT came to an agreement which was reduced to writing, entitled "Agreement and Option" which is dated August 15, 1978. (Exhibit E.) This agreement provided inter alia that the plaintiff withdraw all the defenses to the foreclosure procedings [proceedings] and deliver a general release to CBT. CBT agreed not to pursue a deficiency judgment against him and granted him an option for 6 months to repurchase the entire property at a price determined in accordance with a formula specified in the agreement. The agreement referred to the Parcels covered by the mortgages as "the Premise more particularly described in Exhibit A attached hereto." That portion of the exhibit pertinent to this case refers to a Parcel E. It is clear that Parcel E as described by the agreement does not contain the disputed strip which the plaintiff acquired on June 8, 1973 from HELCO.
On October 23, 1978 a quitclaim in lieu of foreclosure was executed by the plaintiff to the Connecticut Bank and Trust CT Page 7802 Company. The deed was prepared by the bank's attorney's and examined by the plaintiff and his attorney. (Exhibit D-7). (Nuger executed an identical quitclaim to CBT dated October 16, 1978.) The plaintiff's deed refers to an Exhibit "A" for a description of the property transferred. (Exhibit D-7).
The beginning of Exhibit A reads as follows: "Four certain pieces or parcels of land, with the buildings and improvements thereon, situated in the Town of Enfield, County of Hartford and State of Connecticut, being shown as Parcels A, B, D and E on a map entitled "Property of Robert Nuger and Bertram Robinson, Enfield, Conn. scale 1 inch equals 100 feet, June 28, 1973, map no. 181-72-1V Megson and Hyyppa, Civil Engineers, Glastonbury. Conn., revised August 7, 1973 and August 13, 1973.' Which map is on file in the Clerk's office of said Town of Enfield, to which reference may be had; said premises being more particularly designated and bounded as follows:" There follows a running description of each of the aforementioned Parcels. The map referred to is Exhibit M-3 which shows Parcel E as being 60.34 feet in width running from state street, to the Hospitality Inns parcel which area includes Bright Meadow Boulevard and the disputed property. However, the running description of Parcel E describes the original 50 foot strip transferred from HELCO to Nuger. (Exhibit M-1.) The deed to CBT does not contain any language that Robinson was to retain the disputed land. Said deed does include the "language with all the appurtances." Subsequent to the execution of this deed in lieu of foreclosure the plaintiff was unsuccessful in exercising his option and same expired.
In January of 1981, one Paul Fox, the Town Planner for Town of Enfield approached the plaintiff and asked him to execute a quitclaim deed of all his interests in the 10 foot strip to the Connecticut Bank and Trust Company. (Exhibit F.) The plaintiff declined to do so. At no time prior to this date did the plaintiff disclose to CBT, his own lawyer or any other person any indication that he was aware that he had any claim to the disputed land or that he had any intention of making a claim to this land at some time in the future. At the time he signed the CBT deed Robinson had no use for the disputed property, he owned no adjacent land, he could not build on same nor did it meet zoning requirements from the Town.
The defendant, Phoenix Mutual Life Insurance Company, hereinafter, Phoenix, became interested in acquiring land in CT Page 7803 Bright Meadow Park and building thereon a substantial office building. Representatives of Phoenix carried on negotiations with Mr. Robinson for the purchase of any interest he might have in the property offering as much as $25,000.00 at one point. Mr. Robinson refused that offer and made several counter-offers all of which were refused by Phoenix. At no time, however, did Phoenix indicate to Mr. Robinson that it believed that he had clear title to the property.
Phoenix through its counsel contacted the surveyors who had done much of the surveying work for the plaintiff i.e. Hyyppa and Associates. They produced a map containing the disputed property and labeled said property as "property now or formally of Robinson and Nuger." (Exhibit M-5.) Phoenix then had this map revised to delete the reference to Robinson and Nuger. (Exhibit M-6.) It also instructed CBT to use a description omitting any reference to Robinson and Nuger's interest in the street in its deed to Phoenix.
Although the actions of counsel for the defendant, Phoenix, in having the map and description changed to delete the names of Robinson and Nuger appear arbitrary and are characterized by the plaintiff as "steamrollering" and an "affront" to the court, they were in fact consistent with the defendant's counsel's belief that the plaintiff had no valid interest in the disputed land and were taken only after a determined effort to resolve out of court any possible future dispute and consequent additional cost and delays in the development of the property.
Phoenix during the negotiations with plaintiff was in touch with the Town negotiating a transfer of Bright Meadow Boulevard to the Town for purposes of dedication as a public street. The Town was fully aware of the claim of Mr. Robinson. Thereafter CBT conveyed the disputed property to Phoenix by quitclaim deed dated July 27, 1982. Phoenix then conveyed Bright Meadow Boulevard which included both the 50 and the 10 foot strip to the Town by quitclaim deed dated December 21, 1982 and said road was then dedicated to the Town and accepted by the Town in resolution No. 5149.
Since the date of his deed to CBT, the plaintiff has performed no repairs, no snow removal, no painting of traffic lines nor any maintenance to the disputed property. Since said date plaintiff has never paid taxes or maintained insurance for said property. CT Page 7804
In October of 1982 plaintiff brought this action against Phoenix seeking an injunction prohibiting defendant from trespassing upon his claimed land. On February 9, 1983 the plaintiff amended his complaint in order to add a count seeking to determine rights to the property.
It is clear that the quitclaim in lieu of foreclosure from Robinson to CBT of Robinson's undivided one-half interest in the Bright Meadow Office Park land contains an ambiguity in the description of the property it conveys. Although reference in a deed to a map results in the incorporation of that map into the deed (Connecticut General statutes 7-31) this deed refers to two different maps and dimensions; thus an ambiguity exists
Where an ambiguity exists the court must look to the intention of the parties in construing the deed. Lake Garda Improvement Association v. Battistoni, 160 Conn. 503, 511
(1971). In determining the intention of the parties the court should however interpret the language of the deed in the light of the surrounding circumstances at the time of the grant; Lake Garda, supra; Russo v. steppe, 2 Conn. App. 4, 6 (1984) and where a deed is ambiguous it must be construed in favor of the grantee. Lake Garda, Supra at p. 515.
It is the opinion of this court that although he may have relied on counsel for legal advice, the plaintiff is a sophisticated, substantial real estate developer quite capable of reading deeds and maps as they applied to his interests, but he relied upon counsel for legal advice and preparation of his deeds and read only enough to satisfy himself as to what was being transferred.
A quick reading of the deed i.e. the printed portion and the introduction to Exhibit A, but without reference to the lengthy detailed descriptions of each parcel, would indicate that the intention was to transfer the 60.34 foot wide area of the roadway. The ambiguity would not be detected until the last lines of the last description had been read and the map referred to recognized.
At the time of the transfer of the property in lieu of foreclosure plaintiff had interposed defenses to the foreclosure actions and in reaching a settlement had attempted to make the best deal for himself for the future that he could but in so CT Page 7805 doing he made no effort whatsoever to negotiate with reference to his claimed interest in the 10 foot strip. At this time, the 10 foot strip was incorporated into the paved road and esplanade. It was all highly intergrated. It had been used as a road for a considerable period of time. It was part of and absolutely necessary to the further development of the office park.
It is the opinion of this court that the 10 foot strip was not looked upon by the plaintiff nor treated by him as a separate Parcel of property but simply as part of the roadway and that the plaintiff at the time of the transfer in lieu of foreclosure was totally unaware of any legal claim he might have to the 10 foot strip because of the ambiguity in the deed. Rather it was his intention and understanding and the intention and understanding of CBT to transfer the entire roadway including both the 50 foot and the 10 foot strips and the slope rights as part of the overall settlement of the dispute with respect to the foreclosues [foreclosures]. It is the opinion of this court that the plaintiff was not aware of any claim he might have to the 10 foot strip until 1981 when approached by Mr. Fox. It is therefore the opinion of this court that the plaintiff intended to and did transfer to CBT by the quitclaim deed in lieu of foreclosure all interest that he had in the said 10 foot strip together with the slope rights.
The defendant, Phoenix, in its brief states that the plaintiff may not maintain a "quiet title" action because a necessary party, i.e. Nuger, has not been joined in this action. It cites Cornwall v. Lee, 14 Conn. 524, 526 and Cardillo v. Cardillo, 27 Conn. App. 208, 212-13, and says that because Nuger is not a party the court cannot determine the issue of title to the disputed property and should dismiss Robinson's claim to quiet title. The court however disagrees and in accordance with the holding of the Supreme Court in Mihalczo v. Woodmont,175 Conn. 535 and Swenson v. Dittner, 183 Conn. 289, 299 enters the following judgment.
The court finds the issues for the defendants, Phoenix and Town of Enfield, on the complaint and it is adjudged that the title to said disputed land (the 10 foot strip and slope rights) be and the same is quieted and settled in the defendant Town of Enfield as against the plaintiff Robinson and that Robinson has no estate, interest in or encumbrance on said property or any part thereof. (Practice Book, Vol. II form No. 707.10) CT Page 7806
Hale, State Trial Referee